PRESIDENT, DIRECTORS, &c. OF THE CHICOPEE BANK *vs* VERANUS CHAPIN.

Where an action is brought against the first indorser of a note, by a holder to whom it was pledged by the second indorser, as collateral security for a debt, the defendant cannot defeat the action by showing that he indorsed the note for the accommodation of the maker, and entrusted it with him for a special purpose, and that the maker, without any consideration, transferred it to the second indorser, who had knowledge of these facts; unless the defendant can also show that the plaintiff had notice of the same facts when he received the note.: But if the amount of the note is greater than that of the debt secured by the pledge thereof, the defendant may give evidence of those facts, for the purpose of limiting the plaintiff's recovery to the amount of such debt.

ASSUMPSIT by the indorsees against the indorser of a promissory note. The note was made by Moses Eager, for $400, dated February 24th 1844, payable to the defendant, or order, at the Hampden Bank, in five months from date, and was indorsed by the defendant and by Caleb Rice.

At the trial before *Hubbard,* J. the making and indorsing of the note, demand on the maker, and notice to the defendant, were proved or admitted. The defendant called the plaintiffs' cashier as a witness, who testified that a note of $350 was discounted by the plaintiffs for Caleb Rice, on the 18th of March 1844, and that the note in suit was then left by him as collateral security for that note ; that the note in suit had been previously offered by Rice for discount, and had been refused, because Eager (the maker) was then under prosecution for forgery, and also because he was not considered good ; that these reasons for not discounting the note were given to Rice ; and that Rice asked if the indorsement was Chapin's signature : That it was not the practice of the plaintiffs to discount a note, unless the promisor is good ; and that he had no notice, before taking this note, that the defendant refused to pay it, and did not know, till since the note was in suit, that it was contested ; and that Rice did not state how he obtained the note, or of whom.

Caleb Rice testified that he borrowed some money of the plaintiffs, on his own note, and left the note in suit at the bank

as collateral security; that this was about thirty days after the date of the note in suit; that the plaintiffs refused to discount the note, because the maker had been prosecuted for forgery; and that the president and cashier of the bank also said they did not consider the maker good; that he (the witness) told them that he took the note with a blank date, as to the day of the month, and had himself inserted the day; that when he first presented the note, he asked said president and cashier, if the indorsement was the hand writing of Veranus Chapin; that he presumed he told them of whom he had the note, but could not say with certainty that he did; but that he should have told them if they had asked him; that he had previously presented the note to the Hampden Bank, and that it was there refused; that the note of $350, discounted for him (the witness) by the plaintiffs, fell due and was renewed, after the maturity of the note in suit.

This witness, being asked as to his own connexion with this suit, said, " I think I told Mr. Bliss " (the president of the bank) " that he must collect the money, for my note, from his security."

The defendant then offered to prove that Rice, the second indorser, obtained the note from Eager, the maker, and that the defendant was an accommodation indorser merely, and that the whole negotiation in regard to it was between Rice and Eager; that the defendant's indorsement was entrusted to Eager for a special purpose, different from that to which it was applied, and that Eager told Rice of this, at the time of delivering the note to him; and that there was no consideration for the note, as between Rice and Eager. This evidence was rejected.

The defendant also offered to prove that Rice's claim to the note was only as collateral security; contending that, in such case, Rice could not transfer any title to the note, or, at least, that the plaintiffs could recover only the amount of the claim for which it was pledged. And for this purpose he offered to prove that he was only an accommodation indorser. This evidence was rejected.

A default was then entered, subject to the opinion of the court as to the admissibility of the evidence offered by the defendant.

4 *

*J. Wells,* for the defendant. The defendant is entitled to the same defence that he might have made if the suit had been brought by Rice; because the plaintiffs did not receive the note in the ordinary course of business,[*] and because they received it under circumstances of suspicion. *Grew* v. *Burditt,* 9 Pick. 265. *Van Schaack* v. *Stafford,* 12 Pick. 565. 3 Kent Com. (3d ed.) 79 – 81. *Ayer* v. *Hutchins,* 4 Mass. 372. *Thompson* v. *Hale,* 6 Pick. 259. *Hall* v. *Hale,* 8 Connect. 336. *Aldrich* v. *Warren,* 4 Shepley, 465. *Egan* v. *Threlfall,* 5 Dowl. & Ryl. 326, *note. Smith* v. *De Witts,* 6 Dowl. & Ryl. 120. *Wiggin* v. *Bush,* 12 Johns. 310. Chit. on Bills, (10th Amer. ed.) 238.

*R. A. Chapman,* for the plaintiffs. The note was taken before it was payable, and the defence cannot avail the defendant Though it was taken as collateral security, yet that was within the ordinary course of business; and the circumstances under which it was taken were not such as to lead to a suspicion that Eager had fraudulently misapplied it. The plaintiffs refused to discount it, only because Eager's ability to pay was doubted, and because he was under prosecution for forgery. See Story on Bills, §§ 14, 188, 194, 220.

SHAW, C. J. The question for the consideration of the court is, whether the evidence offered by the defendant was properly rejected. It appears that the plaintiffs received the note in question for value, having taken it of Rice, as collateral security for his note of $350, which they discounted. The suit is against Chapin, the indorser. The defence offered was, that Chapin indorsed the note for the accommodation of Eager, the promisor; that it was entrusted by Chapin to Eager, for a special purpose; that in violation of that trust, it was negotiated to Rice; that Rice knew that it was so fraudulently used by Eager; and that Rice gave no value for it.

There is no doubt that these facts, if proved, would be a good defence against any suit which could have been brought by Rice; not because it was an accommodation note, and that

---

[*] See *Jenness* v. *Bean,* 10 N. Hamp. 266. *Williams* v. *Little,* 11 N. Hamp 66.

known to the indorsee ; for that would have been no ground of defence ; but because it was fraudulently misapplied by Eager, and that known to Rice ; and because Rice, in the case supposed, would have given no value for it. And so, if the same facts had been known to the agents of the bank, when they took it, they could not hold and recover ; not because it was an accommodation indorsement, but because they would not be *bonâ fide* holders. See *Lincoln* v. *Stevens,* 7 Met. 529.

In the testimony of the cashier and of Rice, we see nothing to show that the agents of the bank had any notice that the note had been fraudulently applied, by Eager, to a purpose different from that for which it was entrusted to him, and that Rice had not paid value for it. Their refusal to discount it was placed on other grounds, not implying any such notice.

The argument on the part of the defendant is, that one taking a note by indorsement can take no better title than that which the indorser himself had ; and if such indorser could not re cover, on account of having obtained the note by fraud, though regularly indorsed, the indorsee could not recover. But this is not a just conclusion. To secure the circulation of negotiable notes not overdue, nor apparently dishonored, proof of the making and indorsement makes a good *primâ facie* legal title to the holder ; and an indorsee taking for value, and without knowledge of any fraud, may recover, though the fraud might be one which would prevent his indorser from recovering. *Wheeler* v. *Guild,* 20 Pick. 545. The same rule holds in regard to real estate. A. knowing, when he takes his conveyance, of a prior unrecorded deed to B., cannot hold against the prior grantee ; but one taking a conveyance from A., without knowing of the prior unrecorded deed, will hold against B. and his assigns. In such case A., who holds a defeasible title, can, by his deed, convey an indefeasible one. *Trull* v. *Bigelow,* 16 Mass. 406.

In the present case, the evidence offered went no farther than to show the fact, that the indorsement had been fraudulently misapplied by Eager, and that this was known to Rice, and that Rice took without giving value for it ; but it did not propose to

show that this was actually or constructively known to the plain-tiffs. We are of opinion, therefore, that the evidence offered would have been irrelevant, and that the rejection of it was right.

But the court are also of opinion, that the plaintiffs can maintain this ground only so far as they were holders for value — that is, to the amount of the note, for which they took the note in suit as collateral security. So far as they would recover beyond that, they would recover to the use of the indorser. But if the facts were proved, which the evidence that was offered tended to prove, they could not recover for his use, because it would show that he was not a *bonâ fide* holder. Such a division of the damages recoverable by an indorsee is well warranted, we think, on principle and on the authorities. *Jones* v. *Hibbert,* 2 Stark. R. 304. *Wiffen* v. *Roberts,* 1 Esp. R. 261. *Parish* v. *Stone,* 14 Pick. 208.

If the plaintiffs will release so much of the verdict, as to reduce the amount to that of the note discounted by them, it may be so done, and judgment rendered for the reduced sum; otherwise the verdict must be set aside, and a new trial granted, in order to let in, on the question of damages, the evidence which was rejected.