Haas v. Bank of Commerce.

ANDREW HAAS v. BANK OF COMMERCE.

FILED SEPTEMBER 18, 1894. No. 5406.

1. **Corporations:** COLLATERAL ATTACK UPON LEGAL EXISTENCE. Where the law authorizes a corporation, and there has been an attempt in good faith to organize, and corporate functions are thereafter exercised, such an organization is a corporation *de facto,* the legal existence of which cannot ordinarily be called in question collaterally.

2. ———: PROOF OF CORPORATE EXISTENCE. Therefore, where a bank brought an action upon a note indorsed to it and the answer denied the corporate existence of the bank, proof showing the adoption and recording of articles of incorporation, and that the bank had acted thereunder for a period of years, was sufficient to establish its corporate existence.

3. **Negotiable Instruments:** COLLATERAL SECURITY: LIABILITY OF PLEDGEE. The Bank of O. indorsed to the Bank of C. certain promissory notes as collateral security for an indebtedness incurred in favor of the Bank of C. Among these was a note of H., upon which suit was brought. H. claimed that the note had been procured from him by the Bank of O. by fraud, and the evidence tended to prove that fact. *Held*, (*a*) That in the action upon the note H. could not require the Bank of C. to first exhaust its other collateral; (*b*) That the fraud being established, the Bank of C. was only entitled to recover to the extent of the unpaid portion of the indebtedness for which the note was pledged; (*c*) the Bank of C. having surrendered one of the collateral notes and taken in exchange other notes, secured by mortgage, drawn to the order of itself, it was bound to account as if the original note had been paid in full.

4. **Certain rulings on the evidence** examined, and *held* not erroneous.

ERROR from the district court of Douglas county. Tried below before FERGUSON, J.

*Bartlett, Crane & Baldrige*, for plaintiff in error, cited : *Collins v. Collins*, 46 Ia., 60 ; *Gaston v. Austin*, 52 Ia., 35 ; *Wilson Sewing Machine Co. v. Bull*, 52 Ia., 554 ; *Sandwich Mfg. Co. v. Shiley*, 15 Neb., 109 ; *Galoway v. Hicks*, 26 Neb., 531 ; *Fitzgerald v. McCarty*, 55 Ia., 702 ; *Potter v. Chicago, R. I. & P. R. Co.*, 46 Ia., 399 ; *McKinney v. Hartman*, 4 Ia., 153 ; *Klosterman v. Olcott*, 27 Neb., 685 ; *Missouri Coal & Oil Co. v. Hannibal & St. J. R. Co.*, 35 Mo., 84.

*E. J. Cornish, contra*, cited : *Pape v. Capitol Bank of Topeka*, 20 Kan., 440 ; *Society Perun v. Ci'y of Cleveland*, 43 O. St., 481 ; *Williamson v. Kokomo Building & Loan Fund Association*, 89 Ind., 389 ; *Merchants Nat. Bank v. Glendon Co.*, 120 Mass., 97 ; *Commercial Bank of New Orleans v. Martin*, 1 La. Ann., 344 ; *Murphy v. Bartsch*, 23 Pac. Rep. [Idaho], 82 ; *Kennedy v. Rosier*, 33 N. W. Rep. [Ia.], 226 ; *Donnell v. Wyckoff*, 7 Atl. Rep. [N. J.], 673 ; *Foltz v. Hardin*, 28 N. E. Rep. [Ill.], 786 ; *Sioux City & P. R. Co. v. Finlayson*, 16 Neb., 578 ; *Republican V. R.*

*Co. v. Fellers*, 16 Neb., 169; *Sioux City & P. R. Co. v. Brown*, 13 Neb., 317.

IRVINE, C.

The Bank of Commerce sued Andrew Haas on a note made by Haas to the order of the Bank of Omaha for $2,500, with interest at ten per cent from April 25, 1889, and payable ninety days after date. The Bank of Commerce averred it had become owner of said note by a general indorsement thereof. Haas answered, denying the incorporation of the Bank of Commerce; admitting the execution of the note, but denying that the plaintiff was the owner thereof, and alleging that the plaintiff held the note as collateral security to a loan made by the plaintiff to the Bank of Omaha. Haas further averred that the note was given for stock in the Bank of Omaha subscribed for by Haas, upon the faith of certain representations made to him by the officers of the bank, which representations were false. It is unnecessary to state these representations. It is sufficient to say that there was evidence fairly tending to establish the facts that they were made, that they were material, that they were justifiably relied on, and that they were false. Haas also averred that the stock in the Bank of Omaha, for which the note sued on was given, was never issued to him, and that the plaintiff received the note with knowledge of the facts constituting the defense. Finally, it was alleged that the plaintiff, at the time of taking such note and at other times, took from the Bank of Omaha other securities sufficient to secure the loan to the Bank of Omaha, upon which it had realized sufficient to pay said loan, and that the Bank of Commerce retains in its possession a large amount of such securities. The defenses thus set up may be analyzed as follows: First, a plea of fraud in the inception of the note, coupled with a plea of failure of consideration; second, a plea of payment; third, an allegation that other securities held were sufficient

to pay the debt. The reply puts in issue the material averments of the answer, and alleges that the Bank of Commerce took the note before maturity and without notice of any defense thereto. There was a trial to a jury, resulting in a verdict and judgment in favor of the bank for $3,003.29.

The first question discussed in the briefs relates to the corporate existence of the plaintiff bank. The assignments of error which directly refer to those issues relate to the admission in evidence of the articles of incorporation of the bank and the admission of certain parol testimony in regard thereto. From the argument made in the brief we are somewhat in doubt as to whether Haas is complaining of the admission of this evidence, of the legal sufficiency of the evidence, or of the failure of the court to submit the issue to the jury. Perhaps the most satisfactory method of considering the case will be to treat it as if all three questions were presented. As to the admission in evidence of the articles of incorporation, the only objection made was that the document was incompetent. The document in evidence appears to be signed by the incorporators in the presence of an attesting witness, to have been regularly acknowledged, and to bear a regular certificate of acknowledgment by a competent officer. The document also bears the certificate of the county clerk of Douglas county to the effect that it was received for record and was recorded. No specific objections appear either in the record or in the brief. We cannot perceive any reason why this document should have been excluded as incompetent, and none is suggested in argument. As to the sufficiency of the evidence of the corporate existence of the bank it may be well to declare now that where the law authorizes a corporation, and there has been an attempt in good faith to organize, and corporate functions are thereafter exercised, there exists a corporation *de facto*, the legal existence of which cannot ordinarily be

called in question collaterally. It would be intolerable to permit in any civil action, to which such a body was a party, an inquiry into the legal right to exercise corporate functions—a right which it is for the state alone to question in appropriate proceedings for that purpose. On this there is a substantial unanimity in the authorities. Among other cases may be cited, *Williamson v. Kokomo Building & Loan Fund Association*, 89 Ind., 389; *Pape v. Capitol Bank*, 20 Kan., 440; *Lessee of Frost v. Frostburg Coal Co.*, 24 How. [U. S.], 278; *Society Perun v. City of Cleveland*, 43 O. St., 481. The evidence here shows that articles of incorporation were adopted, acknowledged, and filed for record in the office of the county clerk, and that the bank acted under such articles and conducted business thereunder for some years. This was sufficient evidence of a corporate existence. (*Abbott v. Omaha Smelting & Refining Co.*, 4 Neb., 416; *Merchants Nat. Bank v. Glendon Co.*, 120 Mass., 97.)

We may here advert to the assignment of error in regard to the admission of parol evidence in respect to the incorporation. The petition in error refers to the general subject of this assignment, but does not point out the particular ruling complained of. It might be dismissed for that reason. The plaintiff in error had brought out in cross-examination from one witness the fact that after the adoption of the articles of incorporation in evidence the capital stock had been increased and new articles adopted. In redirect examination the defendant in error asked whether the new articles were more than an amendment of the original articles. An answer was admitted to this question, but struck out on motion of the plaintiff in error. Several other questions were then asked, either without an answer or without an objection, and finally the witness was asked whether or not the bank acted under the articles in evidence, except that by an amendment the capital stock was changed. There was an objection to this question, which was overruled, and we here have the only exception relat-

ing to the subject. The question asked related not to the contents of the articles, but to whether the bank was acting under these articles. This was a proper subject for parol evidence and the objection was properly overruled.

The court did not submit the issue we have been discussing to the jury for its determination, but the plaintiff in error took no exception to the instructions in which the court stated the issues; and furthermore, the uncontradicted evidence established a corporation *de facto* and left nothing for the determination of the jury upon the question.

What we have just said in regard to the failure of the plaintiff in error to except to that portion of the instructions stating the issues to the jury also disposes of the argument made that the court erred in stating that the reply denied the allegations of the fifth, sixth, and seventh paragraphs of the answer without stating to the jury what the allegations were in those paragraphs. The pleadings, it will be remembered, admit that the note sued on was held by the defendant in error as collateral security to a loan made to the payee of the note, the Bank of Omaha. On the trial it developed that the Bank of Omaha was indebted upon an overdraft to the Bank of Commerce in the sum of $4,000; that several notes of third persons were held by the Bank of Commerce as a continuing collateral to any indebtedness existing; that on May 27, 1889, $4,000 additional was lent to the Bank of Omaha and other notes transferred as additional collateral, the Bank of Omaha at that time making its note to the Bank of Commerce for $8,000 covering both the overdraft and the new loan. The note of Haas, it would seem from the evidence, was pledged at the time of this transaction, although this point is left in some doubt, and the note in question may have been pledged theretofore. Between the 27th of May and the 6th of June certain other indebtedness, amounting to several hundred dollars, was created from the Bank of Omaha to the Bank of Commerce. On the 6th of June the Bank

of Omaha failed.    Mr. Johnson, who was then cashier of
the Bank of Commerce, was a witness for that bank, and
had testified that the note of Haas was taken without any
knowledge of any defense thereto.    On cross-examination
this question was asked, "Isn't it a fact, Mr. Johnson, that
after your bank had received this note of Andrew Haas
for $2,500 and before the Bank of Omaha failed, it came
to your knowledge that this note had been given condi-
tionally, and that it was a conditional note?"    This ques-
tion was objected to, as incompetent, immaterial, and im-
proper cross-examination, and the objection was sustained.
The theory of the plaintiff in error is that if it came to
the knowledge of the Bank of Commerce that there was a
defense to the Haas note, it could not enforce that note as
against any indebtedness created after the acquisition of
such knowledge, and that the question was, therefore,
proper, as tending to disclose notice received before the last
advances.    Without inquiring as to the legal correctness
of this theory we have concluded that there was no error
in sustaining the objection.    If the question had been asked
a witness on direct examination, it would, in any view of
the law, have been erroneous to permit an answer, for the
reason that the question was not confined to notice ac-
quired prior to the making of the last advances to the
Bank of Omaha.    Being asked on cross-examination, if
admissible at all, it must have been upon the theory of the
greater latitude allowed in cross-examination, and because
the materiality of a question on cross-examination need
not always plainly appear when the question is asked.
Therefore, it is probable that if the objection had been
overruled, there would have been no error.    But concur-
rently with the rule allowing such latitude in cross-exami-
nation there runs the other rule that the extent of such a
cross-examination rests largely in the discretion of the
trial court.    In order that a cross-examination may be
effective, it cannot and should not always require the ma-

teriality of a question to be made evident, but on the other hand it is its duty to prevent the time of the court from being wasted and the attention of the jury from being misled by inquiries into immaterial facts.    An affirmative answer to this question might have misled the jury by apparently charging the bank with notice at a time when notice to it was immaterial, and we do not think that the court abused its discretion in sustaining the objection.

It is difficult to treat the remaining assignments in the order in which they are presented or with any particular reference to the petition in error.    The argument is general in its character and it is somewhat difficult to ascertain to what assignment in error it is directed.    So far, however, as the argument calls any attention to the remaining assignments a discussion of two questions disposes of them all.    The first arises from the contention of the plaintiff in error that the Bank of Commerce held other collateral, being notes of other persons, sufficient to satisfy the debt of the Bank of Omaha, and that it should be required to exhaust the other collateral before proceeding against the plaintiff in error.    It is claimed that the case in this aspect is brought within the principle whereby the holder of a junior security upon a fund may compel the holder of the senior security upon that fund, who also holds other security, to exhaust such other security before proceeding against the fund which is held by both.    We do not think that this doctrine of marshalling has ever been applied to any such case as that under consideration.    It has been frequently decided that the doctrine referred to will never be applied except in the case of a common debtor to both creditors for the protection of the junior creditor, and then only where it may be done without injustice, and will not compel a resort to dubious securities.    It is equally well established that a creditor holding two or more securities for the same debt may proceed to enforce either or all of them, and will not, as a general propo-

sition, be required to proceed in any particular order. In this case the makers of the other notes were not before the court, and for that reason alone the plaintiff in error was not entitled to the relief he sought. (*Dorr v. Shaw,* 4 Johns. Ch. [N. Y.], 17.) The makers of other notes may have had similar defenses or equal or even superior equities. But aside from this, the plaintiff in error had no right at this time or in this manner to seek such relief. There are cases where somewhat similar relief has been granted in favor of one who occupied the position of a surety, but we know of no case like the present. In *Prout v. Lomer,* 79 Ill., 331, a bill in equity charged that certain notes, the collection of which it was sought to enjoin, were given to the complainant for the accommodation of Lomer and procured by fraudulent statements made by Lomer, and that they were held by the respondents as collateral to a debt from Lomer. It was also alleged that the bank had other full and adequate security. The court said: "We are aware of no principle by which the bank can be compelled to any particular course in regard to such collateral as it may have. We fail to perceive any obligation on the bank to convert its securities or do any other act at the instance of this party, if he was a surety. In certain cases, and this is not one, a security to a negotiable note may notify the holder to proceed against the principal, on the maturity of the note. Independent of this, a surety cannot compel the holder to proceed against others before proceeding against himself, and exhaust such other remedies as he may have." The case of the *Third Nat. Bank v. Harrison,* 10 Fed. Rep., 243, was one presenting a somewhat similar state of facts. Alexander borrowed certain money from the bank and deposited certain notes of third persons as collateral security, among these a note of Harrison. It was alleged that this note was given on account of an illegal transaction. It was held that the transaction was not such as to defeat the note in the hands of a *bona fide* holder for

value, and it was further held that the fact that the principal debtor had on deposit in the bank sufficient funds to discharge the debt without recourse to the collateral, was no defense in an action on the note. If no such equity exists as against the principal debtor, certainly none can exist against the makers of other collateral notes.

The plaintiff in error on this branch of the case relies on the case of *Farwell v. Importers & Traders Nat. Bank*, 90 N. Y., 483. In that case Farwell & Co. made their note to certain brokers to be sold in the market on Farwell & Co.'s account. One Farnham, a clerk of the brokers, fraudulently pledged this note, together with a large number of others, to the bank as security for a call loan made to Farnham. When the Farwell note matured, Farwell & Co. paid it, notifying the bank that they would hold it to account for any surplus. Before Farnham's note was matured by demand the bank had collected on the collateral more than sufficient to pay it. Farwell & Co. then brought this action in equity to require a repayment to them of the surplus. The superior court granted the relief, and its judgment was affirmed by the court of appeals. This was upon the ground that the bank had no right to apply the payment received from Farwell & Co. upon Farnham's note until that note matured, that in the meantime it held the money on the same terms as it had before held the note, and that, having received from the security more than enough to satisfy the note before by demand it brought the principal note to maturity, the pledge was released as to the surplus, and the bank became liable therefor. The case would have been very different if Farwell & Co. had refused to pay their note and alleged these facts in defense. In the court of appeals the opinion says : "The defendant, as pledgee, had power to collect the notes as they respectively fell due, but the money thus collected would stand as a substitute for the notes upon which it had been received." This case, when examined, instead of supporting the con-

tention of the plaintiff in error, is clearly contrary thereto. For, if Farwell & Co. were not legally liable upon the note, or if they could have compelled a resort to other securities before paying it, their payment became voluntary, and we cannot see how they would have been in a position thereafter to invoke the aid of a court of equity. We are not here deciding that Mr. Haas may not, after paying this note, in appropriate proceedings with proper parties, have some remedy as against any surplus in the hands of the Bank of Commerce. We simply hold that in a suit upon his note he cannot in defense urge the holding of other security and compel a first resort thereto.

The remaining question relates to the measure of recovery. It appears that the Bank of Commerce intrusted the collateral received from the Bank of Omaha to certain attorneys for collection; that among these collaterals was a note for $1,000 made by one Baumeister. The bank's attorneys made an arrangement whereby this note was surrendered to Baumeister and new notes taken to the order of the Bank of Commerce signed by Baumeister and wife, and secured by a real estate mortgage. About $400 has been paid on this indebtedness. The court instructed the jury that in determining the amount due there must be deducted from the principal indebtedness the amount of collaterals collected by the bank, less the reasonable charges for collecting the same, but that renewal notes should not be credited until paid. This instruction clearly related to the Baumeister transaction, and thereby the jury was informed that only the amount paid on the Baumeister notes should be credited. There is very respectable authority to the effect that it is no defense to a note that it had been pledged with other securities equal in amount, which securities had been by the pledgee exchanged and ultimately found worthless, unless it were also shown that the exchange caused a loss to the owner of the collateral (*Girard Fire & Marine Ins. Co. v. Marr*, 46 Pa. St., 504); but

we think that the weight of authority is to the effect that if a pledgee, without the consent of the debtor, renews or extends a note pledged as collateral, or surrenders such note and takes new security, he must account to his debtor as if he had collected it in full. (*Gage v. Punchard*, 6 Daly [N. Y.], 229; *Newsen v. Lyell*, 5 Hill [N. Y.], 466; *Southwick v. Sax*, 9 Wend. [N. Y.], 122; *Depuy v. Clark*, 12 Ind., 427.) It is quite well settled that where a note is valid as between the original parties, the pledgee may recover the whole amount of the note, retaining any surplus as trustee for the party beneficially entitled; but where the note is invalid as between the original parties, the pledgee may recover only the amount of his advances, provided there be no other party in interest. (*Wiffen v. Roberts*, 1 Esp. [Eng.], 261; *Allaire v. Hartshorne*, 21 N. J. Law, 665; *Chicopee Bank v. Chapin*, 49 Mass., 40; *Union Nat. Bank v. Roberts*, 45 Wis., 373.) The jury should, therefore, have been directed to treat the whole of the Baumeister note as paid. According to one view of the evidence, by treating this as a payment, there would still remain due of the principal debt the whole amount of this judgment; but the evidence was inconclusive as to some portions of the indebtedness of the Bank of Omaha to the Bank of Commerce, and upon this point, as well as upon a few other items of the account, we cannot say that the jury was bound to take the view presented by the aspect of the evidence referred to. The judgment may be excessive to the amount of the unpaid renewal notes of Baumeister, which, with interest to May 11, 1891, the date to which interest was calculated in the judgment, we compute to be $702.50. The defendant in error may remit this amount as of the date of the judgment, and if it do so within thirty days, the judgment will be affirmed for the remainder; otherwise the judgment must be reversed and a new trial awarded.

JUDGMENT ACCORDINGLY.