BERGERON, Respondent, vs. HOBBS and others, Appellants.

*June 12 — June 24, 1897.*

*Corporation* de facto: *County 'agricultural society: Filing certificate, etc.: Condition precedent.*

1. The mere recording of the certificate of organization, etc., of a county agricultural society in the office of the register of deeds, without intention to leave the papers with him and they being in fact withdrawn after being recorded, is not a "filing" thereof within the meaning of sec. 1460, R. S., providing that upon the filing of such papers in said office such society shall have all the powers of a corporation, etc.

2. The filing of said papers is a condition precedent to the vesting of corporate powers; and until the provision is complied with the organizers of the society are not acting as a corporation under color of right, so as to relieve them from individual liability for the debts of the society, even though they carried on business under supposed authority to act as a body corporate in entire good faith. MARSHALL, J., dissents, being of the opinion that by the attempt to comply with the law authorizing the formation of the corporation, and the transaction of business in good faith as such, the society became a corporation *de facto*, whose existence could not be questioned collaterally by those who had dealt with it as a corporation.

APPEAL from a judgment of the circuit court for Bayfield county: JOHN K. PARISH, Circuit Judge. *Affirmed.*

The defendants, under the name of Bayfield Agricultural Association, employed several persons to perform labor in improving their grounds and in erecting fences and buildings. Time checks given by the defendants to such laborers, for such labor, were assigned to the plaintiff, who brings this action to recover their amount, alleging that the defendants were a copartnership. The defendants alleged that they were members of a corporation, and denied that they were copartners, or liable as such. This was the issue which was tried. It appeared upon the trial that articles of organization of the defendants as the Bayfield County Agri-

cultural Association, and a certificate showing the election of officers, had been recorded in the office of the register of deeds of Bayfield county, but were not on file there. They had been deposited with instruction to record and return them, which had been complied with. When the testimony of both sides was in, the court directed a verdict for the plaintiff for the amount of the time checks. From a judgment on that verdict the defendants appeal.

For the appellants the cause was submitted on the brief of *George P. Rossman.*

For the respondent there was a brief by *W. H. Packard* and *A. W. McLeod,* and oral argument by *Mr. McLeod.* They argued, among other things, that whenever the statute requires the filing of the articles of association the filing of the original certificate with the clerk is an indispensable prerequisite to the creation of the corporation. Until this has been done the corporation has no existence, and failure in that regard may be shown incidentally and taken advantage of collaterally, whenever the fact of incorporation is in any form called into question. *Childs v. Hurd,* 32 W. Va. 66; *Mokelumne Hill C. & M. Co. v. Woodbury,* 14 Cal. 425; *Abbott v. Omaha S. & R. Co.* 4 Neb. 416; *McIntire v. McLain Ditching Asso.* 40 Ind. 104; *Att'y Gen. v. Hanchett,* 42 Mich. 436; Thomp. Corp. § 226. Filing the articles of association with the register of deeds is a condition precedent. *Abbott v. Omaha S. & R. Co.* 4 Neb. 416; *Martin v. Deetz,* 102 Cal. 55; Thomp. Corp. § 227; *Spencer, Field & Co. v. Cooks,* 16 La. Ann. 152; *Bigelow v. Gregory,* 73 Ill. 197.

NEWMAN, J. There are two questions raised on this appeal: (1) Was the mere recording of the articles of incorporation, with the certificate of the election of officers, without the intention or fact of the papers themselves remaining in the office, a sufficient compliance with the statute, so that the organization of the corporation became complete, as upon a

proper filing of the papers themselves? And (2) if the recording was not sufficient for that purpose, are the defendants liable to the plaintiff only as a *de facto* corporation, or are they liable as copartners?

1. The statute (sec. 1460, R. S.) provides that, upon the filing of "a certificate of organization, . . . with a copy of the constitution," in the office of the register of deeds of the county, "such society shall have all the powers of a corporation necessary to promote the objects thereof." It cannot be doubted that the filing of the proper papers in the proper office is made, by the statute, a condition precedent to the vesting of corporate powers. The court may not be able to clearly define the respect wherein the mere recording and removal of the papers from the office fails to serve the full purpose which the legislature intended to accomplish by the filing of them. The legislature, no doubt, had good and sufficient reasons for its choice of means to promote its purpose. For the court it is not a question of equivalents. A literal filing of the papers is necessary because it is so written in the law. The term "filing" and the verb "to file," as related to this subject, include the idea that the paper is to remain in its proper order on file in the office. A paper is said to be filed when it is delivered to the proper officer, and by him received, to be kept on file. Bouv. Law Dict. The statute is plain and easy of observance. Valuable rights and exemption from personal liability are to be secured by its observance. It is no undue severity to require its strict observance. The defendants had not observed it, and had not secured corporate powers.

2. Had the defendants secured immunity from individual liability? No doubt, as a general rule, where an attempt to organize a corporation fails by omission of some substantial step or proceeding required by the statute, its members or stockholders are liable as partners for its acts and contracts. Beach, Priv. Corp. §§ 16, 162; 1 Thomp. Corp. §§ 239, 416,

Bergeron vs. Hobbs and others.

417. But the defendants' contention is that they are not within this rule, because they are at least *de facto* a corporation, and their right to be a corporation cannot be inquired into in a collateral action, but only in a direct action for that purpose by the state. The infirmity of the defendants' contention is in the assumption that they are *de facto* a corporation. In order to secure this immunity from inquiry into its right to be a corporation in a collateral action, its action, as a corporation, must be under a *color*, at least, of right. It is immaterial that they have carried on business under the supposed authority to act as a body corporate, in entire good faith. If they had not *color* of legal right, they have obtained no immunity from individual liability for the debts of the supposed corporation. Until the articles of incorporation are filed in the office of the register of deeds of the county, there is no color of legal right to act as a corporation. The filing of such paper is a condition precedent to the right to so act. So long as an act, required as a condition precedent, remains undone, no immunity from individual liability is secured. 1 Thomp. Corp. §§ 226, 508.

The defendants are not a corporation either *de jure* or *de facto*, but are liable for the plaintiff's claim as partners. It was not necessary to prove a copartnership by evidence. That was established by implication of law. Nor was it necessary to prove that the debt was unpaid. There was no presumption that it had been paid to be rebutted. The judgment of the circuit court is right, and must be affirmed.

*By the Court.*— The judgment of the circuit court is affirmed.

MARSHALL, J. With the decision that the defendants failed to comply with all the conditions precedent to the corporate existence of the agricultural association I concur, but from the decision that because of such failure such association was not a corporation *de facto* I respectfully dissent; hence dis-

sent from the conclusion reached that the defendants are personally liable to plaintiff, and that the judgment should be affirmed, but, on the contrary, hold that it should be reversed.

My brethren cite Beach, Priv. Corp. § 162, and 1 Thomp. Corp. §§ 239, 508, to the effect that, unless all the conditions precedent to the creation of a corporation are performed, there can be no corporation in fact, and that the members of the pretended corporation will be personally liable. Then §§ 417 and 420 of Judge Thompson's work are cited, to the effect that, if the corporation never comes into being in fact, so as to be regarded as a corporation *de facto*, the persons who have assumed to contract in its name are personally liable. These sections seem to be tied together, in the opinion of the court, as if the two ideas are in harmony, when the contrary, to my mind, is manifestly true. Thompson treats this subject in such a way as to naturally confuse one who attempts to follow him as authority. After saying, in §§ 239, 508, in effect, that all the conditions precedent to the creation of a corporation must be complied with, in order that the members may escape personal liability, he says, in § 417, that the rule does not apply to corporations *de facto*, and in § 420 that where there is a corporation *de facto*,— in other words, where the circumstances are such that a corporation might exist, and where the party seeking to charge the members individually has dealt with them as a corporation,— he is estopped from setting up the fact that they are not a corporation *de jure*, in order to charge them personally. From this confusion it is not to be wondered at that if a person tries to follow Judge Thompson he will be led inevitably into the position of holding that, *unless all the conditions precedent to the existence of a corporation are complied with, personal liability of the members of the corporation will exist, though the rule does not apply if the organization be a corporation* de facto. That comes from trying to

harmonize conflicting decisions, that proceed on theories so opposite that harmony is impossible.

If we hold with Missouri, Arkansas, and some other states, that unless all the steps necessary to the creation of the corporation have been taken there is no corporate existence, and that the members of the association are personally liable, we, in effect, say that it is not sufficient to enable such members to escape personal liability to show that their organization is a corporation *de facto;* that nothing short of a corporation *de jure* will do. But if we adopt the growing doctrine, supported, as I shall show, by the overwhelming weight of authority in this country, that if a person contracts with a *de facto* corporation, the members of the latter and such person believing, in good faith, in its legal existence, such members cannot be held personally liable, then we concede, necessarily, that it is not essential to freedom from such liability that all the statutory requisites to the existence of a corporation be complied with, because, when that is done, the organization, obviously, is not a corporation *de facto* only; it is a corporation *de jure.* This is too plain to admit of serious discussion.

While the decision in this case, as I read the opinion of the court, in one view, goes upon the ground that the members of a *de facto* corporation are not responsible personally, inasmuch as it may be held that the decision really is to the effect that personal liability exists because all the conditions precedent to a corporation *de jure* were not complied with, some reference to authorities on the subject of whether to escape such liability it is necessary that the corporation exist in fact may be proper.

The development of the law on this subject has been rapid in recent years in the direction of holding that the state only can challenge the legality of the exercise of corporate powers. The ancient doctrine was that all contracts made by a corporation in excess of its powers were void. That has not

been changed, but the doctrine has grown up and become well-nigh universal, that the state only can raise the question by proceedings to punish the corporation.   Our court is fully committed to such doctrine.  *John V. Farwell Co. v. Wolf*, *ante*, p. 10.   Following closely upon the growth of such doctrine, as applied to transactions in excess of corporate powers, where there is no question as to the existence of the corporation, it has been extended, so as to prevent private persons, who have contracted with a *de facto* corporation, from questioning its existence; holding that sovereign power only can raise that question. This court having fully adopted the doctrine where there is a corporation in fact, how it can be rejected where the corporation is *de facto* merely is not perceived, inasmuch as a controlling reason for it in the one case applies equally to the other.   In both cases there is an exercise of powers that can only be lawfully exercised by sovereign authority; hence the unauthorized exercise of power constitutes a public offense, not against any individual, but against the sovereignty of the state.  A few authorities of the multitude that exist on the question under discussion will be referred to.

In *Cochran v. Arnold*, 58 Pa. St. 399, the question was whether a person who had contracted with a pretended corporation, so defectively formed that in a suit by the commonwealth it would have been enjoined for want of legal existence, could, in an action against the members of such corporation to enforce personal liability, successfully question the corporate existence.   The case is particularly in point here, because the corporation claimed to exist by compliance with a general law, and the point was made that the rule that a private person cannot question the existence of a corporation assuming to exist under the special law does not apply fully to corporations organized under general laws.   To that and the general subject Mr. Justice STRONG said: "Though formed under a general law, it is, as against all the world but the

Bergeron vs. Hobbs and others.

commonwealth, as completely and effectually a corporate body as if it had been created by a special act of assembly and by letters patent. . . . Until the franchise claimed and used has been directly adjudged not to exist, there is a corporation *de facto*, at least. If there is anything settled, it is that the corporate existence of a corporation *de facto* cannot be inquired into collaterally. Upon this subject the authorities are too numerous to admit of citations." The learned judge then proceeds to show that the doctrine announced was contrary to earlier decisions of the court, but that happily, before any great mischiefs had been caused by the error in such earlier decisions, the opportunity was presented for correcting it and placing the court in line with the great weight of authority on the subject. Considering the consequences of a contrary view, he said, in effect: 'The mischiefs of such a doctrine would be the same, whatever the mode of obtaining corporate existence. One jury might say there was no corporation; another jury find to the contrary. One creditor might sue the corporation as a valid organization; another sue the members, alleging that the charter is null and furnishes no immunity from personal liability. New stockholders might come in, wholly ignorant of the secret vice in obtaining the corporate thing, and be held liable. The charter would have to be effective upon the one hand and ineffective upon the other. What confusion would such a monstrous doctrine produce!' This language fairly expresses the idea of the court, and is not too strong to fit the case; and the ruling has been followed down to the present time by such court. In *Hamilton v. C., M. & P. R. Co.* 144 Pa. St. 34, there was an attempt to set up want of legal incorporation, and Justice Paxton said, in effect, the corporation at least had a *de facto* existence; therefore, it could contract debts, and, if there is anything settled in the law, it is that the existence of a corporation *de facto* cannot be inquired into collaterally. See, also, *Spahr v.*

*Farmers' Bank*, 94 Pa. St. 429; also, *Guckert v. Hacke*, 159, Pa. St. 303, where the court held that though, if plaintiff had dealt with defendants as a corporation he would have been estopped from claiming against them in any other capacity, he was not in that case, because he did not know that they pretended to be a corporation; therefore, did not deal with them as such.

The same subject was treated by the supreme court of Georgia in *Planters' & M. Bank v. Padgett*, 69 Ga. 159, where the rule was laid down, in effect, that having contracted with the company, through its officers or agents, both parties believing the corporation to exist *de jure* as well as *de facto*, an action cannot be maintained against them personally on the contract. The members never agreed to enter into the contract severally or jointly; they never agreed to be bound as partners, or to hold themselves out as such. The contract was intended to bind the association in a corporate capacity only.

In *Gartside Coal Co. v. Maxwell*, 22 Fed. Rep. 197, the corporation was so defectively organized as to have no legal existence. An action was brought by one who had dealt with it, against the stockholders, to hold them personally liable. Judge BREWER, in delivering the opinion of the court, said, substantially, if the corporation had been challenged by the state, its exercise of corporate powers would have been enjoined, but where persons act in good faith, and suppose they are members of a valid corporation and transact business as such, and the corporate existence is not challenged by the state, they cannot be held liable as individuals; that if a person deals with a supposed corporation,— with what all persons suppose is a corporation,— he cannot afterwards turn around and say, "Well, I dealt with this supposed corporation; I thought it was a corporation; I trusted it as such; but, by reason of failure to legally incorporate, there is no legal corporation; therefore, I will hold the stockhold-

ers personally liable." I do not think that can be done. To the same effect are *Stafford Nat. Bank v. Palmer*, 47 Conn. 443; *Eaton v. Walker*, 76 Mich. 579; *Merchants' & M. Bank v. Stone*, 38 Mich. 779; *Haas v. Bank of Commerce*, 41 Neb. 757; 17 Am. & Eng. Ency. of Law, 866, and numerous cases there cited; 4 Thomp. Corp. § 5275; Morawetz, Priv. Corp. (1st ed.), §§ 141, 142; Angell & A. Corp. § 635. In Cook, Stock, § 637, the rule is laid down and supported by many authorities, to the effect that, with few exceptions not including the case under consideration, no one is allowed to assert that the corporation was illegally incorporated until that result has been decreed by a court in a proceeding instituted for that purpose by the state; that where persons do business in good faith as a corporation, without having any legal existence as such, it is called a *de facto* corporation, and only the state is allowed to question its existence. So, a party contracting with such a corporation cannot defeat his obligation by saying that the corporation was never legally incorporated.

The foregoing citation of authorities has been carried to great length, but warranted, in my judgment, from the importance of the question involved. After carefully examining such authorities and the reasoning on which the doctrine discussed is based, I am unable to understand how any other conclusion can be reached than that a decision cannot be made that plaintiff in this case can attack the existence of the agricultural association as a corporation, if it were such *de facto*, without holding in direct conflict with the decision in *John V. Farwell Co. v. Wolf, ante*, p. 10, which is supported by the highest authorities in this country, and which the court certainly would not wish to question. True, there are some authorities still holding to the ancient doctrine that any one can challenge the existence of a corporation or the legality of its acts, but the trend of modern authority is to fence in, within constantly narrowing limits, the cases

where private persons can attack either the existence of a corporation or the legality of its exercise of powers; and in the humble opinion of the writer, the theory that a private person can so attack a corporation will disappear altogether in the near future, either by the courts that adhere to the ancient doctrine voluntarily changing their rule on the subject, or by its being changed by statute.

Illinois has adhered as rigidly as any state to the doctrine that a creditor may raise the question of want of legal incorporation, yet, in the recent case of *Winget v. Quincy B. & H. Asso.* 128 Ill. 67, it was held that, if a person contracts with a corporation *de facto* and receives the benefit of such contract, he cannot be permitted to allege any defect in the organization of the corporation as affecting its capacity to make the contract, even if the law under which it was organized was unconstitutional; that objection to the corporate existence is available only on behalf of the sovereign power of the state. That is carrying the doctrine under discussion further than is necessary for the purposes of this case, and beyond the general rule that there cannot be a *de facto* corporation under an unconstitutional law, because it is absolutely necessary to the existence of a *de facto* corporation that there be a valid law under which it might exist *de jure*.

So we say the law is that he who deals with a *de facto* corporation cannot attack its legal existence, though in administering it courts do not agree as to all the reasons for the doctrine. By some it rests on the ground that courts can only enforce contracts actually made by parties — cannot make contracts for them; by others upon the ground of estoppel; by others upon the broad, universally established principle that only the state can question the existence of a corporate organization, or the legality of its exercise of powers; and by still others upon the ground that broad principles of justice and public policy require that persons who, in

good faith, assume to exercise corporate powers and have a *de facto* right so to do, should not be compelled, in all their business transactions, in all courts and places, to be ready to successfully meet attacks upon their right in this regard; that so long as the law exists under which they might legally do the very thing they assume to do, and the failure to comply with the law is a mere usurpation of power, which only concerns the community in its sovereign capacity without prejudice to the individual members of the state, justice and the certainty of contracts, upon which prosperous business in the complicated, practical affairs of life depend, require that such persons as against all but the state shall be regarded as that which they assume to be, and might in fact be, except for some act on their part not attributable to bad faith. In our judgment, all of the reasons strongly support the doctrine, and either is sufficient, particularly the one sanctioned by this court in *John V. Farwell Co. v. Wolf, ante,* p. 10, that only the state can question the legality of corporate existence when there is a colorable right to so exist.

It only remains to be considered whether the association in question was a *de facto* corporation. My brethren say no, and, as I understand it, because there was a failure to perform some condition precedent to its being a corporation *de jure*. I must assume that such is really not the doctrine of this court, for the essential element of a mere corporation *de facto* is failure to comply with some provision of law requisite to its legal existence. Where such conditions are all complied with, then the corporation becomes an organization *de jure*, as well as *de facto*, and the doctrine pertaining to the latter class of official bodies has no application whatever. If it were the law that a corporation must be such *de jure* in order to be such *de facto*, obviously, the doctrine pertaining to the latter, upon which much learning has been displayed by the courts and text writers, would stand as the result of much useless expenditure of mental energy. The

true doctrine is that it is sufficient to constitute a corporation *de facto*, as against one who has recognized its corporate existence, that there be a law under which it might exist *de jure*, an attempt in good faith to organize under such law, and a subsequent user of the assumed corporate powers. This is not an open question in this state. In *Evenson v. Ellingson*, 67 Wis. 634, the question was considered, and in an opinion by Mr. Justice ORTON the rule was laid down, in effect, as above stated, and the case has been since approvingly cited by standard text writers and by many of the highest courts of the country as a correct exposition of the law. I might rest this opinion on the subject of whether the association in question was a *de facto* corporation, upon the principle there laid down, but, inasmuch as the subject is one of considerable importance, and one which the court will be liable to consider on some future occasion, some general treatment of the subject is necessary to meet the purposes of this opinion. The transaction of business by corporate bodies has become so very general, and the system is growing so rapidly, that just what is necessary in order that persons assuming to exercise corporate powers may safely consider themselves a corporation *de facto* is of the highest importance to the safe conduct of the multitude of business operations conducted by such bodies, and to an understanding by such persons of their legal liability.

One of the earliest and best considered cases on this subject is *Methodist E. U. Church v. Pickett*, 19 N. Y. 482. The corporation claimed to exist under a general law. Such law required the making, acknowledging, and recording of a certificate of organization, showing certain facts. That was complied with, except that the certificate did not show the existence of all facts requisite to a legal corporation. After acting as a corporation for some time, in an action brought as such to which a private person was a party, its corporate existence was challenged. On the question thus presented,

Mr. Justice SELDEN, speaking for the court, said: "It has been repeatedly held that, as against all persons who have entered into contracts with bodies assuming to act in a corporate capacity, it is sufficient for such bodies to show themselves to be corporations *de facto*, and to that end two things are necessary: (1) The existence of a charter or some law under which a corporation with the powers assumed might lawfully be created; and (2) a user by the party to the suit of the rights claimed to be conferred by such charter or law. The rule established by law, as well as by reason, is that parties recognizing the existence of corporations, by dealing with them, have no right to object to any irregularity in their organization. As long as it is overlooked or tolerated by the state, it is not for individuals to call it in question." And further, in effect, that if the law exists, and the record exhibits a *bona fide* attempt to organize under it, or there is even a slight evidence of user, that is all that is required to establish the corporation *de facto;* and evidence, in a contest between it and one who has dealt with it as a corporation, of defects in its organization, short of such as would show a want of good faith on the part of those concerned in the proceedings, would be wholly immaterial. Judge SELDEN refers to numerous earlier decisions in New York on the subject, particularly to *U. S. Bank v. Stearns*, 15 Wend. 314, *Trustees of Vernon Soc. v. Hills*, 6 Cow. 23, and *Brouwer v. Appleby*, 1 Sandf. 158, where OAKLEY, C. J., discussing the same subject, said: "The defendant, as a contracting party with this corporation, cannot object to the want of the requisite organization, and any defect in that respect, if valid, is only available in behalf of the sovereign power of the state."

*Vanneman v. Young*, 52 N. J. Law, 403, touches the instant case at every point. The condition precedent which defendants here failed to perform was that as to filing in the office of the register of deeds of their constitution and certificate

of organization. They recorded their articles of organization, which were adopted, in form, under the general incorporating act, not that relating specially to agricultural societies; so that the record, speaking with reference to the papers required to be on file with the register of deeds, was not merely defective; it did not exist at all. Now it may be contended that, while such official record need not show that all the steps requisite to the organization of the corporation were taken, in order to give it colorable existence, an official record of some sort, showing an attempt to comply with the law, is necessary. In *Methodist E. U. Church v. Pickett, supra,* the following language is used: "If the law exists, and the *record exhibits* a *bona fide* attempt to organize under it," that is sufficient. This may be deemed to signify that the *record* referred to must be an *official record,*— the record which the law requires shall be made. The same language is used in Angell & A. Corp. § 635, but a careful examination of the authorities will clearly show that the *record* intended is not the record of the corporation papers required by law. The word "record" refers solely to the acts shown by the evidence to have been actually done by the persons assuming to act as a corporation, by way of complying with the law authorizing its organization. Such facts constitute the record, in a legal sense, of their doings, and *by such record* it must appear that they, in good faith, intended to acquire corporate power.

In *Vanneman v. Young, supra,* there was, as here, an absolute failure to comply with the law in respect to the official record. The certificate of incorporation was not filed in the office of the secretary of state. That, under the New Jersey law, was essential to corporate existence. Plaintiff sold to the pretended corporation some merchandise, and, upon payment therefor not being made, suit was brought by him against the members of the corporation, to charge them personally as partners, upon the ground that the corporation

·had no legal existence. In deciding the question thus pre-
·sented, Mr. Justice Dixon said, in effect: 'The statute au-
thorized the incorporation of the associates. They attempted
·to organize under its provisions. The contract was entered
into by plaintiff on the assumption that he was dealing with
a corporation *de jure*. The failure of the associates to com-
ply with the statute did not, in the least, impair the rights
which the plaintiff intended to secure by his contract. Under
these circumstances, the plaintiff cannot bring into question
the legality of the corporation. Where the law authorizes
a corporation, and there is an effort in good faith to organ-
ize under the law, and, as a result of such effort, corporate
·functions are assumed and exercised, the organization be-
comes a corporation *de facto*, . . . and its existence can only
·be inquired into in a direct proceeding brought in the name
of the state. No private person having dealings with a
*de facto* corporation can be permitted to say that it is not
a corporation *de jure*.'

In *Georgia S. & F. R. Co. v. Mercantile T. & D. Co.* 94
Ga. 309, there was a general law under which the organiza-
tion might have been incorporated. It organized under a
special law that was held unconstitutional. There was an
·entire absence, it will be observed, of any *official record* of
any act done under the general law. It was held that the
special law was unconstitutional and void; hence that the
organization had no *de jure* existence; nevertheless, that it
was a corporation *de facto;* that the essentials of a *de facto*
corporation were all present: (1) A law under which the
organization might have been incorporated; (2) a *bona fide*
attempt to become incorporated; and (3) an assumption and
exercise of the powers of a corporation, unchallenged by the
state.

The foregoing authorities are believed to fairly state the
law in respect to what is necessary to constitute a corpora-
tion *de facto*. The very meaning of the term "*de facto*" in-

·dicates that nothing more is necessary to the existence of a *de facto* corporation than the exercise of corporate powers in good faith. *Corporation* de facto,— *that is, a corporation from the fact that it is acting as such under color of right in good faith.* The existence of the law, and some attempt to comply with it, are essential, because without them there ·can be no assumption of the right to corporate existence in .good faith. Persons cannot be said to honestly claim the right to corporate existence, in the absence of any law au- :thorizing the organization, or in the absence of some honest attempt to comply with such law, if one exists. The law and such attempt, or user of the franchise, whatever mis- takes may be made in so doing,— such as the filing of arti- cles of organization when they are required to be recorded, ·or the recording of articles when they are required to be filed, or the filing of such articles in the wrong office, or any ·other of the numerous mistakes that might be made,— make .a corporation good everywhere, in all courts and places, till successfully challenged by the state. There·is hardly any ·end of authority, all in harmony on this subject, but we con- tent ourselves by referring to the following additional cases: *Haas v. Bank of Commerce,* 41 Neb. 754; *East Norway Lake N. E. L. Church v. Froislie,* 37 Minn. 447; *Snider's Sons' Co. ·v. Troy,* 91 Ala. 224; *Stout v. Zulick,* 48 N. J. Law, 601; *McCarthy v. Lavasche,* 89 Ill. 270; *Hudson v. Green Hill Seminary Corp.* 113 Ill. 618; *St. Louis v. Shields,* 62 Mo. 247; *Central A. & M. Asso. v. Alabama G. L. Ins. Co.* 70 Ala. 120; *Palmer v. Lawrence,* 3 Sandf. 161; *North v. State ex rel. Pate,* 107 Ind. 356.

From the foregoing, I am warranted in asserting that, by well-settled principles of law, the agricultural association with whom plaintiff contracted was a *de facto* corporation. Every element necessary to make it such appears clearly by the record. There was a law under which it might have ·existed. The association prepared their constitution, and

adopted it in the form of ordinary articles of organization, under the general incorporating act, and by mistake they filed it for record, and it was recorded and returned, instead of filing it to be left in the office, as the law requires. They supposed that they had corporate existence by reason of the recording of their articles of organization. They assumed to act as a corporation, and exercised corporate powers for a considerable length of time, and, for aught that appears, in the utmost good faith. Certainly, the existence of the law, the making and recording of articles of organization in an honest attempt to become a corporation, and the honest assumption and exercise of corporate powers, *prima facie*, establishes good faith. Plaintiff supposed that the corporation was a corporate body till long after his contract relations with the association ceased. Now to allow him to come in and say that the corporation did not exist which all supposed had legal existence; that, though the officers of the association and plaintiff contracted for a corporate liability on the part of the former, it shall be held, nevertheless, that the members of such association are bound as partners, in direct violation of the well-settled law that such an association, under the circumstances, was a *de facto* corporate body; and that, as between the parties, the relations are the same in all respects as though the corporation had a *de jure* existence, and contrary to the settled doctrine, as I believe, of this and most other courts,— is what the judgment in this case does, in my opinion.

I think the judgment of the circuit court, holding the defendants liable as partners, was wrong, and that it should be reversed, and the cause remanded for a new trial.