STATE, EX REL. LINCOLN TRACTION COMPANY, RELATOR, V. LINCOLN FROST, JUDGE, RESPONDENT.

FILED FEBRUARY 8, 1907.   No. 15,013.

1. Street Railways: CITY ORDINANCES: VALIDITY.   An ordinance of a city, which requires street railway companies and other corporations holding franchises to use the streets of the city to file an application for a permit before entering upon and obstructing the streets, and which requires the applicant to file specifications of

the manner in which the work is to be constructed, and to fix the location thereof, and requires it to give bond to hold the city harmless for damages caused by the proposed work, and which gives the city council power to grant or refuse such permit, is not invalid as interfering with or violating the franchise rights of the company in the streets.

2. ——: ——: OFFICERS: PRESUMPTIONS. The court will not presume that under such an ordinance the city authorities will act arbitrarily or abuse their discretion, but will presume that the ordinance will be construed according to its legal effect, and that if the proper conditions are met the permit will not be refused.

ORIGINAL application for a writ of mandamus to compel respondent, as district judge, to vacate such portion of a temporary injunction as required relator to remove its tracks from a certain street. *Writ denied.*

*Clark & Allen,* for relator.

*E. C. Strode, contra.*

LETTON, J.

This is an original application for a writ of mandamus. The relator, a street railway company which is the owner of a franchise to construct and operate a line of street railway on certain streets in the city of Lincoln, among which are N street and Twenty-first street, had commenced to build a line of railway upon N street, when an injunction was issued at the instance of the city of Lincoln, restraining it from further proceedings. A mandatory order was contained in the temporary injunction issued, commanding it to remove from the street the rails and ties already laid and put the street in the same condition in which it was found. This order was not final, but was merely interlocutory; and since the relator was unable to appeal from the same it began this action, praying for a writ of mandamus to require the respondent to vacate so much of the temporary order as requires it to take up and remove its tracks on Twenty-First street and on N street. The application for the writ alleges that the sole

ground for the injunction was that the relator had not obtained from the city council a permit in conformity with a certain ordinance of the city, and further alleged that the ordinance in question is void for various reasons set forth in the petition and which will be hereafter noticed. It was conceded upon the hearing that the question of whether or not the relator was entitled to a writ in this case depended upon the question whether the ordinance in question is void, or is a valid and proper exercise of the police powers of the city in the matter of the regulation of the construction of street railways.

The ordinance in question is entitled "An ordinance regulating the construction of new street railway tracks, gas mains, or other constructions or works of whatever kind in streets, public ways or grounds; to prohibit additional construction of street railway lines, except by consent of the mayor and council; and to amend and repeal all ordinances in conflict herewith." The first section provides in substance that no street railway company, gas company or owner of any system of public works, having or claiming a franchise within the city, shall construct any new lines of tracks, mains or works, or the repair thereof, that requires obstruction of the use of the streets, except in accordance with the terms and conditions following. Section 2, so far as material here is as follows: "Any street railway company desiring to construct new tracks on streets not by it previously occupied * * * shall file with the city clerk a written application for permit to construct such track, stating location thereof, with complete specifications and plans of its proposed manner of construction and material to be used" (omitting the remainder of said section, which provides for the deposit of a certified check for and an estimate of the cost of paving on streets already paved). Section 3: "On filing such certified check, application, and estimate of the city engineer, the matter shall come for consideration of the council, who shall cause publication of notice in two daily papers published in the city for not less than one

week that the matter of such application will be considered by the council at a meeting, the time of which shall be therein stated, at which any persons interested may appear and show cause, if any there be, why such permit should not be granted. Such application shall then come before the council to be considered and may then be granted or refused as the mayor and council determine. If the permit is refused the certified check shall be returned to the company applying for such permit." Section 4 makes similar requirements as to gas companies or other companies having franchises for underground construction. Section 5 recites: "Every such applicant, street railway or other owner shall with their application file its undertaking to hold the city of Lincoln harmless of all claim for loss or damage that may at any time accrue to any person whomsoever or to any property by reason of such proposed work, or for the manner of its execution and construction, and thereupon, except as hereinbefore provided, permit shall be granted to such company and it shall be authorized to proceed with such work." Section 6 provides penalties for a violation of the ordinance.

The relator contends that the ordinance is void because it empowers the city council to grant or refuse a permit to street railways to construct tracks, and thereby enables the council to prohibit the exercise of the franchise and destroy the franchise itself, and that it is not a regulative ordinance, since it does not contain any terms or conditions whereby the exercise of the franchise is regulated. In support of this contention it shows that in the state of Nebraska street railway franchises are granted not by the municipalities, but under the provisions of section 2, art. XIb of the constitution, which provides that "no general law shall be passed by the legislature granting the right to construct and operate a street railway within any city, town, or incorporated village, without first requiring the consent of a majority of the electors thereof," and of sections 1-5, art. VII, ch. 72, Comp. St. 1905. These sections require the organization of a corporation;

that the termini of the proposed street railway must be fixed and the precise route described in its articles of incorporation, naming the streets through which the railway is to be constructed; the consent of a majority of the electors of the city to be given at a special election; the canvass of the vote by the council, and the recording in the office of the county clerk of a certificate of the city clerk of the result, showing the consent of a majority of the electors: whereupon such company shall be authorized to construct and operate a street railway, "subject to such rules and regulations as may be established by ordinances of such city."

Construing these sections of the constitution and the statutes, we have held that there is no authority given to a city to grant charters to street railways; that the only authority given the city is to submit the proposition to the electors; for the consent of a majority of the electors is a condition precedent, on the happening of which depends the right to construct and maintain the railway. The grant by the legislature under general law is ineffectual to give street railways the right to operate upon the streets of a city, unless such company has obtained consent of a majority of the electors. The constitution and the statutes and the articles of incorporation constitute the charter of the company, and the consent of the electors properly certified and recorded give it the license and authority to enter upon the streets, and the city can never add to nor take away any of its charter rights. *Lincoln Street R. Co. v. City of Lincoln*, 61 Neb. 109. Since, therefore, the city of Lincoln has no power to grant or withhold a franchise to the corporation, and since the ordinance confers upon the city council the power to refuse the company permission to enter and construct its lines upon the streets upon which the consent of the electors has already been given it to operate, the relator argues that it is void, being in contravention of both the statutes of the state and the constitution.

On the other hand, the respondent contends that, grant-

ing that the position of the relator is correct, and that the franchise of the company is derived from the general law and the articles of incorporation, and its right to use the streets in question has been given by the electors of the city and cannot be rescinded by the city, still its use of the streets must be and is subject to such reasonable regulations as the city authorities may prescribe and require for the protection of the public and for the orderly and proper use of the streets of the city, and that an ordinance which requires a street railway corporation which desires to construct new tracks upon streets not previously occupied by it, or to place additional tracks upon streets already occupied, to file with the city clerk a written application for a permit to construct such tracks, stating the location, with complete specifications and plans of its proposed manner of construction and of the material to be used, is a reasonable exercise of the police powers of the city in the regulation of streets and highways; that it impairs no contract and violates no franchise. It is pointed out that the authorization to construct and operate such street railway is granted under the statute, "subject to such rules and regulations as may be established by ordinances of such city." The respondent admits that such rules and regulations must be reasonable in their operation, and must not be so harsh and arbitrary as to result in a violation of the franchise rights and privileges granted to the corporation, but insists that the ordinance in question is not of such a nature, but is a valid and proper exercise of the right of regulation.

It will be observed that the provisions of this ordinance are not confined to street railway companies alone, but apply to "gas mains, or other constructions or works of whatever kind in streets, public ways or grounds." It would seem that the object of this enactment is to procure and provide a permanent record of both surface and subsurface construction in the streets of the city, so that the exact location of street railway tracks and of gas mains, water mains and other underground construction may be

State v. Frost.

preserved of record for the use and benefit of the city authorities. It needs no argument to show that such a record is not only useful, but well-nigh essential for the proper control and regulation of the use of the streets of a modern city. While the main purpose of the street is for passage by the general public and for the carrying on of traffic over its surface, still, in the present age, gas mains, water mains, conduits for the carrying of telephone, telegraph and electric light wires, sewers, and pipe lines for other purposes are carried beneath the surface of the streets, and, unless an accurate record were kept by the city authorities of the depth and location of such lines, inextricable confusion and great damage might easily ensue. And so with the surface of the street. In a wide street the construction of a street railway with double tracks might be both reasonable and proper, while in a narrow street the construction and operation of more than one line of track might make the street practically useless for ordinary traffic. It is highly proper, therefore, that, before a street railway company enters upon the construction of its railroad in a street, it submit the location of its proposed line of road, together with the specifications and description of materials proposed to be used, to the city authorities, to the end that it may be constructed with due and proper regard to the interests of the community in general, and with proper regard for public safety and convenience. In this discussion we have assumed that the purpose of the city in the passage of the ordinance is what it appears to be upon the face of the enactment. The court will not presume that the city authorities intend to act arbitrarily, and without due and proper regard for the rights and franchise of the relator. It is said that the terms of the ordinance permit the council to grant or refuse a permit, and that the whole matter of whether the relator may enter upon a street or not is left to the uncontrolled judgment of the city council; but this, we think, does not follow, and if it should ever happen that the city authorities acted, not in good

faith, but arbitrarily and by an abuse of their discretion, and refused to permit the relator to construct and operate its line upon a street over which it was licensed to operate, the courts would afford a remedy.

The relator contends that the provisions of the ordinance requiring notice to be given and a time fixed for all parties interested to show cause, if any there be, why a permit should not be granted, evidences that it was the intention of the council to construe the ordinance to mean that the city council may grant or refuse a permit at their will, but this is not a necessary deduction. The notice is designed to apprise the public generally, and persons living along the line of the proposed construction in particular, of the place and manner in which the railway is intended to be built. There may be circumstances, well known to the people living upon a street, why a railway should not be constructed upon a certain portion of the street or in a certain manner, which might not be clearly obvious to the members of the council, and the object of the notice and the time and place fixed for hearing is to give every person interested an opportunity to be heard upon all such matters or others suggested by the plan proposed.

It is argued by the relator that other ordinances prescribe full regulations for the construction of street railways, and hence this one is useless and arbitrary; but the provision of this ordinance which requires specifications of the manner in which the line is proposed to be built is proper and necessary for the purpose of furnishing the city authorities with information as to whether it is the intention of the railway company to construct the line in accordance with the rules and regulations contained in such ordinances. As the respondent contends, the practice is similar to that of obtaining an ordinary building permit. The ordinances of the city prescribe the manner in which buildings shall be erected within certain limits, and require intending builders to apply for permission to erect buildings and to furnish such details of the pro-

posed erection to the city engineer as will enable that officer to determine whether or not the proposed construction is permissible under the requirements prescribed by ordinance; and so here, since other ordinances exist prescribing the manner in which street railways shall be constructed, the detailed information required by this ordinance is necessary to allow the city authorities to determine whether the company proposes to comply with such restrictions. Further than this, the requirement that, before a permit shall be granted, an undertaking shall be given by every such applicant to hold the city of Lincoln harmless for all claims for loss or damage which may accrue to any person or to any property by reason of the proposed work or by the manner of its execution and construction, is a very proper and necessary condition, and one which the city authorities would be derelict in their duty if they did not require as a condition precedent to opening up and incumbering the streets. It is the duty of the city to use ordinary care to see that the streets are reasonably safe for public travel. If it permits individuals or corporations to dig holes and pile obstructions in the streets without exercising due care, it may be compelled to incur a liability to pay damages which in the ordinary use of the streets would not occur.

Under the conceded facts, the relator has entered upon the construction of a street railway without making any attempt to test the temper of the city authorities upon the question of whether permission would be granted it. It has not tendered any bond to hold the city of Lincoln harmless from any damages that may accrue from the opening and incumbering of the streets. It has not described the location of its proposed railway or the manner in which it intends to build it. It seems to have assumed that the city council intended to violate its duty by arbitrarily refusing a permit. The matter seems so plain as not to require further discussion. We are of the opinion that the ordinance is a just and valid exercise of the police power of the city authorities for the care and

regulation of the streets and for the protection of the public; that, properly construed and administered, it is neither harsh nor arbitrary in its operation. As the stipulation of the parties makes the decision of this case depend upon the invalidity of the ordinance, the relator is not entitled to a writ of mandamus. The writ is therefore denied.

WRIT DENIED.