STATE, EX REL. JAMES L. CALDWELL, APPELLANT, V. LINCOLN STREET RAILWAY COMPANY ET AL., APPELLEES.[*]

FILED DECEMBER 18, 1907.   No. 15,063.

1. **Street Railways: CHARTER.** The charter of a street railway company organized for the purpose of constructing a system of lines in a city of this state, under act of February 15, 1877 (laws 1877, p. 135), must fix the termini of the road, and state the street or streets through which it is proposed to construct and operate the same.

2. ———: **USE OF STREETS: SUBMISSION TO ELECTORS.** The consent of a majority of the electors of the city to the use and occupation of the streets over which the proposed road is to be constructed must be obtained before construction is commenced; such consent to be given or withheld at an election called for that purpose.

3. ———: ———. The consent of the electors to the occupation of all the streets of a city by a street railway company, where no termini are mentioned in the notice of the election, carries with it no right to the use of any street which is not used for the construction of the road within a reasonable time thereafter. To hold that such blanket consent, where no termini or route is submitted to the electors, confers on the company the right to the use and occupation of any of the streets which it might at any time thereafter select as best suited to its interest would be awarding to a private corporation a power which the people, by their constitution, have withheld from the legislature of the

---

[*] Motion to modify opinion overruled. See opinion, p. 352, *post*.

state and from the municipal authorities where the streets are located.

4. **Quo Warranto**: PROCEEDINGS AGAINST CORPORATION. An information in the nature of a *quo warranto* filed against a corporation by its corporate name admits the existence of the corporation. If the charge be that the corporation is exercising powers not given by its charter, the action proceeds against the corporation to oust it from the use of the usurped power; but, where it is claimed that corporate powers are being usurped by a body which has no corporate existence, then the action must be against the individuals who are usurping corporate rights.

5. **Estoppel**: LACHES. The courts, in a proper case, will apply the doctrine of laches to a case in which the state is a party plaintiff. The state, like individuals, may be estopped by its acts or laches, and should not be allowed to oust a corporation of its rights and franchises where, for a long series of years, it has stood silent and seen the corporation expend large sums in the acquisition of property and improvements made thereon under a claimed right so to do under its charter.

6. **Judgment**: RES JUDICATA. The city of Lincoln brought an action against a street car company to oust it from the possession of certain streets in which its tracks were laid, alleging that its only right in the streets was derived from the purchase of the property and franchise of another company that had obtained the consent of the electors of the city to the use of its streets for railway purposes, that such consent was not transferable, and that the tracks of the company were an obstruction in the streets and constituted a public nuisance. On demurrer to this petition judgment went in favor of the defendant, which judgment is still in full force and effect. *Held*, That if it were conceded that the city represented the state in such action, and that the state was bound by the judgment to the same extent as the city, still the force of the judgment as a bar or estoppel in a subsequent action brought by the state could extend no further than to define the rights of the company in the streets then occupied by its tracks, that being the only question litigated, the right of the company to the use of other streets not being in issue.

APPEAL from the district court for Lancaster county. LINCOLN FROST, JUDGE. *Reversed with directions.*

*F. M. Tyrrell, Charles O. Whedon* and *J. M. Stewart,* for appellant.

*Clark & Allen, contra.*

DUFFIE, C.

Section 1, art. XIb of our present constitution, adopted in 1875, is as follows: "No corporation shall be created by special law, * * * but the legislature shall provide by general laws for the organization of all corporations hereafter to be created. All general laws passed pursuant to this section may be altered from time to time, or repealed." Section 2 of the same article is in the following words: "No such general law shall be passed by the legislature granting the right to construct and operate a street railroad within any city, town, or incorporated village, without first requiring the consent of a majority of the electors thereof." At the session of the legislature held in 1877 (laws 1877, p. 135) an act was passed relating to the formation of street railway companies. The act, so far as necessary to an understanding of this case, is as follows: Section 1. "Any number of persons may be associated and incorporated under the general laws of this state providing for the creation of corporations for the purpose of constructing and operating a street railroad within any of the cities of this state, upon procuring the consent of a majority of the electors of any such city as hereinafter provided." Section 2. "Every such corporation, previous to the commencement of any business except its own organization, must adopt articles of incorporation and have them recorded in the office of the county clerk of the county in which the city within which it is proposed to construct and operate such street railroad is situated, and must procure the consent of a majority of the electors of such city as herein provided." Section 3. "The articles of incorporation must fix the termini of such street railroad, and state the street or streets through which it is proposed to construct and operate the same." Section 4 provides for obtaining the consent of a majority of the electors of the city by submitting the question to the electors at an election to be held for that purpose, and requiring ten days' notice by publication, which notice shall

state the termini of such proposed street railroad, and the street or streets through which it is proposed to construct and operate the same. Section 5 provides for the holding of such election in the same manner and at the same places as the general city election, and that, if a majority of the votes cast shall be in favor of the construction and operation of such proposed street railroad, the council shall cause the city clerk to make out a certificate of the result, stating that the consent of a majority of the electors has been given to the construction and operation of such street railway, which certificate shall be delivered to the chief officer of the railroad company, who shall cause the same to be recorded in the office of the county clerk where the articles of association of such street railway company are recorded, and in the same book, and such certificate shall be *prima facie* evidence of the facts stated therein and thereupon such street railroad company *shall be authorized to proceed and construct and operate such street railroad, as described in its articles of association,* or any portion thereof, subject to such rules and regulations as may be established by ordinances of the city.

On March 9, 1885, articles of incorporation of the Lincoln Street Railway Company were filed and recorded in the office of the county clerk of Lancaster county, which articles provided for certain termini of the railway, and the streets through which it was proposed to construct the same. The streets mentioned in the articles are from First to Twenty-Seventh streets, both inclusive, running north and south through the city, and from A to W streets running east and west, and other streets, which, as we understand, included all the then established streets of the city. The articles also provided for termini of the company "at such other points within five miles of the corporate limits of the city of Lincoln as the company may see fit to build to." An election was thereafter held, the notice of which described the streets of the city through which it was proposed to construct the road as described in the articles of incorporation, but which omitted to give the termini of

the proposed road, and a certificate was duly issued to the street railway company certifying that a majority of the votes cast were in favor of the proposition. Some time in January, 1890, the Lincoln Electric Railway Company was incorporated and filed its articles in the office of the county clerk of Lancaster county. The third paragraph of these articles, after designating certain termini of the lines of the company within the corporate limits of the city, contains a clause providing for other termini "at such other points in the vicinity of Lincoln as it may be advisable to select for such termini lines," and in the same paragraph is a provision for constructing its tracks in all the streets of the city then established, running both east and west and north and south through the city. July 1, 1887, the Standard Street Railway Company was incorporated for the purpose of constructing a street railway in the city of Lincoln. The third article provides as follows: "The termini of the lines of such company are fixed at or near the several railway depots in the city of Lincoln, and at or near University Place, and at such other points in the city of Lincoln and vicinity for a radius of five miles outside the limits of said city of Lincoln as it may deem advisable to select." The streets through which it is proposed to construct its line of road are, as we understand, all the streets of the city then laid out or existing, running both north and south and east and west through the city. March 19, 1887, the Lincoln Rapid Transit Company was incorporated; the third paragraph of the articles providing for termini at the several railroad depots, at or near the intersection of Eleventh and P streets, at or near the intersection of Eleventh and N streets, at or near the intersection of Twelfth and N streets in said city, also in West Lincoln, and at the Nebraska Exposition Association grounds, at a point near the Wesleyan University place, Wyuka cemetery, the penitentiary, the hospital for the insane, and such other points in the vicinity of Lincoln as it may be deemed advisable to select

for termini of lines. Said article further provides for the construction of tracks, branches and connecting lines over and along First, Second, Third, up to and including Thirty-Third street, and other named streets running north and south, and the streets running east and west through the city, which description includes, as we understand, all the streets of the city then laid out or in existence. Elections were held to obtain the consent of the electors to the construction of railways by each of the above named companies, the notice of such election reciting, in substance, the provisions of the aforementioned articles of incorporation relating to the streets over which it was proposed to construct street railways by the several companies above mentioned, except that the termini of the proposed roads were omitted, and certificates issued to the chief officers of the several companies showing that the proposition had been adopted by a majority of all the votes cast at the election.

By chapter 38, laws 1889, street railways were authorized to unite their roads by consolidation, purchase, sale, or by subscription to or purchase of capital stock, and to mortgage their railways and property for the construction, equipment and extension of their roads. Under the provisions of this act the Lincoln Street Railway Company and the other companies above named executed articles of consolidation at different dates during the year 1891, and thereby became merged in a single corporation which retained the name of Lincoln Street Railway Company; and thereafter the lines constructed by each of the above named corporations were operated by the Lincoln Street Railway Company formed by the merger and consolidation of the above named separate companies. In July, 1891, the Lincoln Street Railway Company executed and delivered to the New York Security & Trust Company a trust deed on its property and franchises to secure the payment of bonds in the sum of $600,000 issued for the purpose of borrowing money to construct and equip its lines of street railway. About June, 1892, said railway company ex-

ecuted and delivered to the New York Guaranty & Indemnity Company a trust deed on its railway and franchises to secure bonds in the sum of $800,000 issued for the purposes aforesaid. Default being made in the payment of the interest accruing on these bonds, the mortgagees commenced an action of foreclosure in the United States circuit court, and in July, 1897, a decree was entered in favor of the mortgagees finding that each of said mortgages was a valid lien on the railway and franchises of the Lincoln Street Railway Company, and directing the property and franchises of the company to be sold and the proceeds applied on the sum found due. A sale under this decree was had in December, 1897, at which Moses L. Scudder and William Belcher, alleged to be acting as the agents of the Lincoln Traction Company, bid in the property in their own names, and the master conducting the sale, acting under the directions of the court, made and delivered to Scudder and Belcher a deed conveying to them the railway and franchises of the Lincoln Street Railway Company; and thereafter Scudder and Belcher made and delivered to the defendant Lincoln Traction Company a deed conveying to it the railway property and franchises of said company. Thereafter, and about January 10, 1898, the defendant took possession of the railway and has from that time to the present continuously operated the same.

The Lincoln Traction Company was organized on December 15, 1897. There is no provision in its articles for the construction of any street railway in the city of Lincoln or elsewhere, the evident purpose of the corporation being to purchase the property and franchises of the Lincoln Street Railway Company. This appears from the third paragraph of its articles, which defines the general nature of its business to be the acquisition by gift, grant, purchase, lease or otherwise, at public or private sale, and to own, enjoy, maintain, control and operate all or any part of the property or property rights, franchises, easements, lots, lands, etc., now or hereafter in the possession

or ownership of a certain corporation known as the "Lincoln Street Railway Company," and it is under these articles and the conveyance to it of the property and franchises of the Lincoln Street Railway Company by Scudder and Belcher that it now claims the right to occupy the streets in the city of Lincoln, and to operate thereon the several lines of street railway of which it is in possession, and to extend its lines in and over any of the streets of the city at its pleasure.

The relator, as county attorney of the county of Lancaster, brought this action to oust the defendant from its occupancy of any and all streets in the city of Lincoln. In the information filed he alleges that the Lincoln Street Railway Company, without right, and without lawful authority therefor, and without first obtaining the consent of a majority of the electors of said city of Lincoln, assumed to construct, in and upon certain streets of the city, street railway tracks; and, without authority therefor, assumed to lay down, in and upon certain public streets, ties and rails, and to run and operate street cars, without having obtained any right, authority or franchise therefor from said city or the electors thereof. The information then recites the particular lines of street railway constructed by the Lincoln Street Railway Company and which are now being operated by the defendant, the Lincoln Traction Company. It is further recited that the Lincoln Street Railway Company claims the right to construct and operate said lines of street railway under an ordinance passed by the mayor and council of the city in 1885 and a pretended consent of a majority of the electors obtained at an election held in April, 1885, but it is alleged that no legal notice of such election was given. It is further stated that the Lincoln Street Railway Company operated its lines for a few years and then abandoned the same, when the Lincoln Traction Company, without right or authority, assumed the right to operate street cars and a line of street railway upon and over the streets of Lincoln and practically along the routes theretofore oc-

cupied by the Lincoln Street Railway Company. Reference is then made to the articles of incorporation of the Lincoln Traction Company, and its right to own or operate a street railway company assailed upon the grounds above named, and also for the reason that its articles of incorporation do not name any termini of any street railway which it proposed to construct or operate, or any streets of the city of Lincoln which it proposes to occupy or over which it intends to operate its cars. It is further stated that the Lincoln Traction Company is constructing additional lines for which no consent has been obtained from the electors of the city, and that it never has filed any map or plat showing the route or location of any proposed line.

The answer of the defendant, the Lincoln Traction Company, recites the organization of the several street railway companies heretofore described and the consent of the electors of the city to the construction of lines of street railway by said several corporations. It further alleges the consolidation and merging of these several corporations into one corporation known as the "Lincoln Street Railway Company"; the issue of bonds as heretofore recited; the foreclosure of the mortgages given to secure the payment of said bonds; a sale of the property and franchise of the Street Railway Company to Scudder and Belcher, who, it is alleged, were acting for and on behalf of the Lincoln Traction Company in making the purchase at the master's sale; the conveyance by Scudder and Belcher of the property so bid in by them to the Lincoln Traction Company, after which, it is alleged, said company took possession of the railway and franchises of the Lincoln Street Railway Company, and has from that time to the present continuously operated the street railway purchased, and exercised and used the franchise obtained thereby. For a further defense it is alleged that the Lincoln Street Railway Company used the franchise granted by its charter openly and notoriously for more than 21 years prior to the filing of the amended information in

this case, and that any action challenging the grant of the franchise is barred by lapse of time, and that the law will presume a grant. It is further stated that after its organization the state in many ways recognized and acquiesced in the grant of the franchise claimed by the company under its articles; that it has assessed and collected taxes for each year from 1885 to 1897 on the property and franchise of the corporation; and that the city of Lincoln, acting under authority of the state, levied and collected taxes against the corporation finally merged and consolidated into the Lincoln Street Railway Company. Laches is also charged against the state in the conduct of the case, in that the trial of the action had been delayed for eight years after its commencement, and that in the meantime taxes had been levied and collected against its property and franchise, and that it had issued and sold bonds to the extent of $150,000 and expended large sums of money in the construction and equipment of its lines. It is also alleged that at the time the Lincoln Traction Company purchased the property and franchises of the Lincoln Street Railway Company an action was pending against the latter company in the district court for Lancaster county to enforce the payment of certain special taxes assessed against its property; that after the purchase the Lincoln Traction Company was made a party defendant to said action, and that the city, by a substituted petition filed therein, alleged that the defendant had acquired no franchise to construct and operate a street railway on any streets of the city of Lincoln; that it had acquired no right by its pretended purchase under the decree of the United States circuit court; and that it was wrongfully and unlawfully occupying the streets of the city and obstructing travel thereon; that the defendant answered to the merits in said action; that the issue raised was submitted to the court, which on March 12, 1902, gave judgment in favor of the defendant and against the city of Lincoln, and adjudged that the defendant had a valid franchise to operate a street railway in the streets of the city and was lawfully

occupying the streets under such franchise, and this judgment is pleaded in bar of this action.  A subsequent action brought against the defendant by the city of Lincoln to oust it from its occupancy of the streets of the city, and in which judgment was given for the defendant, is also pleaded in bar of this action.  The trial resulted in a judgment for the defendant, and the relator has brought this appeal.

The foregoing extended statement of facts and of the issues made by the pleadings seemed necessary to an understanding of our views of the rights of the respective parties.  It will be noticed from the provisions of our constitution and the several statutes relating to street railways set forth in the above statement that two things are essential to the legal maintenance and operation of a street railway in any city of this state:  First, a corporate organization whereby a franchise to operate a street railway is obtained; and, second, the consent of a majority of the electors of the city to the occupation of the streets with the necessary tracks and equipment for the operation of the road.  The first requisite can be obtained only from the state by organization under the general incorporation law provided for those wishing such a franchise, the charter reciting, among other things, the termini of the proposed railway, and naming the route and street or streets through which it is proposed to construct and operate the same; and, second, the consent of the electors of the city to the use of the streets named, which consent must be given at an election held in the usual manner after ten days' notice.  This consent of the electors, when legally given to a legal proposition submitted to them, constitutes, in our view, the grant of a right of way on and over the streets named in the articles of incorporation and in the notice for the election, and confers upon the railway company an easement in the street which is irrevocable after the company has, within a reasonable time, acted upon the permission given and constructed its lines of road.

It is insisted by the relator, and strenuously urged in

a brief filed by the city attorney, who was allowed to appear in the interests of the citizens of Lincoln, that the several propositions submitted on behalf of the several railway companies to occupy all the streets of the city with their tracks was not such a proposition as the constitution and statutes contemplate, and that the consent given was therefore void. Our views upon this question cannot be better expressed than in the words of Judge Lurton, found in *Mayor v. Africa,* 77 Fed. 501, where permission to enter upon the streets of the city had first to be obtained from the city council, and where the ordinance manifesting the consent of the council covered all or nearly all the streets of the city. The Judge said: "To say that the whole of the grant constitutes a route or system is absurd. The grant covers every street, and, if occupied, would result in a railroad upon the four sides of every city square. The city would be covered by a line of railroad having the system of a checkerboard, regardless of the public interest, and in defiance of the public necessity. No community would for a moment tolerate such an unnecessary and harmful obstruction of its streets, and no company could possibly contemplate such a multiplication of parallel lines, crossed at right angles at each cross street by another series of like parallel lines. The clear purpose of this ordinance was to enable the grantee to elect from time to time what streets it would occupy, and what new lines, or extensions of old ones, its interests as a private corporation would justify. To delegate this power to a street railroad company is wholly inadmissible, violates every principle of public policy, and has no sanction in law. The provisions of the statute which we have heretofore cited, providing that 'no one of the streets of said city shall be used by said company * * * until the consent of the city authorities has been first obtained and an ordinance shall have been passed prescribing the terms on which the same may be done,' is a clear implication that the city authorities shall know what streets the

proposed railroad is to occupy, and intelligently determine whether the public interests will thereby be subserved."

In the absence of a constitutional provision the control of the streets and public highways of the state is vested in the legislature, which may delegate to the municipal authorities therein the power of such control and regulation. This control is to be exercised in the public interest, and our people were so jealous of this right they made it a provision of the constitution that neither the legislature nor the municipal authorities should have authority to grant a right of way for street railways in any city or incorporated town. They reserve to the people of each municipality the authority to say upon what streets a street railway might be constructed, and this consent was to be given at an election in which the proposition was to be submitted. Of necessity this means that a specific grant is to be asked for, that a specific route must be designated, that a blanket grant to occupy any or all of the streets of the city was never intended or contemplated, for this would be granting to a private corporation the right to choose its own route, and to lay its track in any street of the city as its interest might dictate, thus vesting it with the very power which the people have denied to the legislature and the municipal authorities. It requires no argument to show that a blanket grant of this kind conferred upon a private corporation to exercise its own discretion in the choice of routes would be exercised in its own interest, regardless of the public welfare. The occupation of the public streets of the city by railway lines is a matter of public interest to be exercised for the public benefit, and is a matter that cannot be delegated to a private corporation to be used at its discretion, as advantage or injury to its own interest may require. The most that can be claimed from the permission obtained from the electors of the city of Lincoln by the several street railway companies is the right to enter upon such streets of the city, within a reasonable time after such permission was granted, as they thought best to occupy

with their lines of road.  So far as these lines have been constructed we think the defendant may claim an easement over the streets occupied, but the blanket license under which the defendant claims the right to extend its lines or to go upon other streets must be denied.

As to the constructed lines, it would be manifestly unjust, not only to the defendant, but to the holders of its securities, to now oust it of rights and privileges which it and those through whom it takes title have been claiming and exercising for years with knowledge and acquiescence on the part of the state.  The state, like individuals, may be estopped by its act, conduct, silence and acquiescence. *State v. Flint & P. M. R. Co.*, 89 Mich. 481.  In *State v. School District*, 85 Minn. 230, it is said: "In cases where the right of a corporation to assert its corporate existence has been questioned because of some defect or irregularity in the proceedings for organization, it has frequently been held that the doctrine of estoppel is applicable, where there have been acts on the part of the state which in terms amount to a waiver.  The conduct of a state may be such as to constitute a declaration that a forfeiture of corporate rights will not be insisted upon, and that the right to declare such forfeiture is waived.  The authorities upon this are abundant."  Cooley, in his work on Constitutional Limitations (5th ed.), 311, after stating the well-known rule that the corporate existence of a municipal corporation cannot be questioned by a private individual, and that the state only can raise that question by *quo warranto* or other direct proceedings, proceeds to say: "The state itself may justly be precluded, on the principle of estoppel, from raising such an objection, where there has been long acquiescence and recognition."  It is a significant fact that, even after commencing the action, the state for eight years made no effort to bring it to a trial and allowed it to slumber upon the docket.  In this condition of affairs it seems unconscionable to ask us to deny the defendant the right to operate its constructed lines, and as a consequence compel it to sell its property for what it may

bring, or, if no sale can be effected, to make a scrap pile of its personal effects.

What we have said in relation to a blanket license to enter upon the streets of Lincoln arises from the fact that the charter of the companies mentioned did not attempt to fix termini covering all the streets of the city, and the electors had no notice of the termini of the different lines of road when the several elections were held. We are not attempting to determine the rights of a company under conditions different from what here appears. If the articles of incorporation of these several companies had fixed a terminus at the end of each street, and the notice of election had set forth such termini so that the voters understood that they were extending to the company the privilege of building along each street from one end to the other, it might be that a different rule would prevail. We are not now called on to pass upon the effect of such a franchise, and our decision rests wholly upon what appears in the record. We are induced to make these remarks because in *Mayor v. Africa, supra,* the court of appeals affirmed the right of the railway company to construct and operate its road upon the streets and between the termini which were specifically set forth in the ordinance passed by the city council. In the opinion it is said: "Without expressing any opinion upon the other objections urged by counsel for appellants, we are content to reverse the decree of the lower court upon the ground that the ordinance of 1876 was not a valid or effectual consent to the occupation of any street *other than those embraced by the route beginning at the intersection of Main and Gay streets and terminating at the junction of Broad and Jackson.* The termini and general course of that route are specifically described, and the requirement of the tenth section of the ordinance, that the track upon those streets shall be laid within a given time, is an effectual recognition of that line as a route specifically consented to by the municipality."

The state insists that the Lincoln Traction Company has no corporate capacity to own or operate a line of street

railway because its charter does not describe the termini of its lines or the streets in the city over which its road is to be operated, and, further, because its charter does not conform to the statute in providing for the construction as well as the operation of a street railway. We think the information filed by the state concludes it upon this question. Where it is sought to question the corporate existence of an alleged corporation—that is, where the franchise *to be* a corporation is intended to be drawn in question, the proceeding must be against the individuals who usurp such franchise. Where the information is filed against a defendant by its corporate name, charging a usurpation of corporate franchises, and process has issued and been served accordingly, and the defendant has appeared and pleaded in a corporate capacity, setting up its charter, it is not competent for the state to deny the corporate existence of the defendant. In *People v. Rensselaer & S. R. Co.*, 15 Wend. (N. Y.) 113, it was held that an information in the nature of a *quo warranto*, filed under the revised statutes of the state of New York against a corporation by a corporate name, admits the existence of the corporation or that it once had a legal existence. And in *State v. Cincinnati Gas Light & Coke Co.*, 18 Ohio St. 262, 286, it is said: "We are aware of no case in this country, in which a body, sued as a corporation, has been ousted of the franchise to be a corporation, on the ground that it never had a legal corporate existence." Where a corporation is exercising powers or privileges in excess of its charter, then it may be proceeded against as a corporation, and the court will oust it of the franchises which it is usurping in violation of its charter. But where, as here, it is claimed that it has no existence as a corporate body because not organized in accordance with our statute, the case must proceed against the individuals who are usurping corporate rights.

Relating to the claim of the defendant that its right to construct and operate a street railway in the city of Lincoln is *res judicata*, it may be conceded that this is the case

so far as its lines were completed and in operation when the decrees relied on were entered. There were two suits in the district court for Lancaster county in which it is claimed the question was raised by the city of Lincoln. One was an action to enjoin the Lincoln Traction Company from constructing or operating a street railway, on the ground that it was unlawfully and wrongfully occupying the streets of the city. The other was an action to enforce certain paving assessments levied against the property of the Lincoln Street Railway Company and constituent companies, in which the validity of the mortgages given by that company was attacked, as was also the title of the Lincoln Traction Company derived through a foreclosure of these mortgages. If we concede that the city represented the state in these actions, which is not at all clear still the judgments entered would operate as an estoppel only to the extent that the city, by its plea, questioned the right of the railway company to the use of its streets. As we understand the record, the question put in issue by the suit first mentioned was the right of the Lincoln Traction Company to occupy the streets of the city with the lines then in operation, and its right to extend these lines and to take possession of other streets was not in question and was not covered by the decree entered. The petition in that case does not charge that the Lincoln Traction Company claimed any right in any of the streets of the city not then occupied by its railway, and the only fact alleged in support of the claim that the company was a trespasser upon the streets occupied by its lines rests in an allegation that defendant's only right to occupy those streets arose from a transfer to it of the property and franchises of the Lincoln Street Railway Company, to whom it was then conceded the people had extended the right to construct a street railway, the claim of the city being that such license or privilege was personal to the Lincoln Street Railway Company, and that it could not be conveyed or transferred to another company. It is true that in the prayer for relief the court is asked to

enjoin the Lincoln Traction Company from occupying the streets of the city for the *construction,* operation or maintenance of any line of street railway; but nowhere in the charging part of the petition is it alleged that the Lincoln Traction Company is constructing, or claims the right to construct, additional lines of road from those then in operation; and the question of its right to occupy any street upon which a line was not then constructed was not made an issue in the case. The estoppel could not operate beyond the issue made and the question tried, and that question was whether the Lincoln Traction Company was obstructing the streets of the city and whether the lines then in operation were a nuisance because of a want of authority on the part of the Lincoln Traction Company to maintain and operate the same. We cannot discover that the right of the Lincoln Traction Company to extend its lines or to occupy additional streets was in question in the second case above referred to, and, as we now recognize the right of the company to own and operate its lines, so far as completed, a further discussion of these cases is not called for. The federal court, in the foreclosure proceedings above referred to, was not called upon, and did not in fact, pass upon the extent of the franchise of the Lincoln Street Railway Company, which was sold as a part of the mortgage security, nor was the question of the validity of its claim to occupy the streets of the city one which was then litigated. These questions are still pending for the decision of the courts, and we are not concluded thereon by any judgment heretofore entered.

Defendant further complains of the action of the trial court in allowing an amended petition to be filed raising the issue of the right of the Lincoln Traction Company to occupy any of the streets of the city. It is said that the original petition charged the company only with a failure to perform its duties and obligations as a corporation; that the suit was instituted and the case tried on the theory that a grant was made to the Lincoln Street Railway Company by reason of which it assumed certain obli-

gations to the public which it had failed to perform, and that the case was tried and determined upon that theory. It is earnestly insisted that this court, instead of passing upon the questions presented by the record, should confine its examination to a review of the case on the theory on which it is said it was tried and determined in the district court. It may be that the trial court, even under our liberal statute relating to the amendment of pleadings, was in error in allowing the amended information to be filed; but, however that may be, the question of the right of the defendant companies to occupy the streets of the city of Lincoln and to exercise their own discretion in selecting the route upon which they will construct additional lines of road is fairly raised by the pleadings, and this question has been thoroughly argued by the attorneys of the respective parties. In a case of such great public importance we do not think the state should be concluded by our strict adherence to the theory upon which the district court may have tried the case. No claim is made that the record does not contain all the material evidence which could be offered in support of the rights of the defendant company to own and operate the line of road in its possession or to further extend its lines. If it be conceded that the trial court did not proceed upon the same theory upon which the case has been presented to this court, we fail to see where a different case could be made for the defendants. In this condition of the case an affirmance of the decree would be a great injustice to the public, and remanding it for another trial could benefit neither of the parties.

There are other questions discussed in the briefs of counsel which we regard as unimportant in determining the rights of the parties. For the benefit of counsel we will say that they have all been considered, but their consideration has not in anywise changed our views as above set forth. Our conclusion is that the Lincoln Traction Company is the owner of the constructed lines of street railway of which it is now in possession, and that it has right and

authority to maintain and operate the same, that its purchase of the lines formerly owned by the Lincoln Street Railway Company does not invest it with right or power to extend its lines, or to take possession of streets, or parts of streets, not now occupied by its completed lines, and that such extensions cannot be made, except by proceeding as required by law to obtain an additional franchise for that purpose and the consent of the electors of the city to such extensions as it may desire to make and such new lines as it may propose to construct.

We recommend, therefore, that the cause be remanded to the district court, with directions to modify its decree in conformity with the views expressed in this opinion.

EPPERSON and GOOD, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the cause is remanded to the district court, with directions to modify its decree in conformity with the views expressed above.

REVERSED

The following opinion on motion to modify former opinion was filed November 6, 1908. *Motion overruled:*

New Trial: PRACTICE IN SUPREME COURT. Rule 7 of this court allowing 40 days from the filing of the opinion or rendition of the judgment in the case within which to file a motion for rehearing supersedes the general rule as to judgments becoming final at the expiration of the term at which they are rendered. This applies only to judgments and opinions by the court in its appellate jurisdiction. In the exercise of its original jurisdiction the provisions of section 602 *et seq.* of the code apply.

PER CURIAM.

Since the filing of the opinion in this case on December 18, 1907, a number of motions have been filed. The questions raised thereby we think are of sufficient moment to require a written opinion in their determination.

The term at which the opinion was rendered adjourned *sine die* upon the 19th day of December, 1907. Upon the

27th day of January, 1908, and within the 40 days allowed by rule 7 of this court for the filing of a motion for rehearing, the Lincoln Traction Company, appellee, filed a motion praying for a modification of the opinion and judgment of the court. This motion was accompanied by a printed brief in support thereof. On June 4, 1908, a paper was filed by appellee purporting to dismiss and withdraw its motion to modify the opinion and judgment. On June 8, 1908, a motion to modify the opinion was filed by the relator and appellant, alleging that the opinion is indefinite and uncertain as to the extent and duration of the appellee's rights on the streets of the city, and asking that the opinion be modified so as to limit and define such rights, and that the cause be ordered reargued upon this question. On June 20, 1908, the appellee filed objections to the consideration of the appellant's motion to modify the opinion, on the grounds that the court had lost jurisdiction because the motion was not filed at the September, 1907, term in which judgment was rendered; that it was not filed within the 40 days allowed by rule 7 of this court for the filing of motions for rehearing; that the vacation or modification asked is within the prohibition of the fourteenth amendment to the constitution of the United States; and that, since the adjournment of the term at which the judgment was rendered, investments had been made in the stocks and bonds of the appellee on the faith that the judgment was final. Briefs were filed by the respective parties in support of their respective contentions.

All of these filings were made during the January, 1908, term of court, which adjourned while the motions were pending. At this, the September, 1908, term, the appellee filed a motion to strike the motion of relator and appellant to modify the opinion and judgment from the files for the foregoing reasons, and for the further reason that "the issue sought to be raised by the motion, to wit, the duration of the franchise of appellee is not within the pleadings, and the court has no power to adjudicate and determine

the same." We can scarcely credit that the appellee means to be taken seriously as to the first two reasons which it gives for its contention that we are without jurisdiction to consider the motion of the appellant to modify the opinion and judgment. From the first institution of this court it has been the practice to allow motions for rehearing to be filed within 40 days from the filing of the opinion or judgment in a case, without reference to whether or not the term had expired at which the opinion was handed down, except in cases brought under the original jurisdiction of this court, where, as we held in *State v. State Journal Company*, 77 Neb. 771, by virtue of the statute, the same rules apply with regard to opening judgments after the term has expired as in the district courts of the state. Counsel for appellee have themselves adopted this construction of the law, and acted upon it in this case, by filing a motion for the modification of the judgment, accompanied by a printed brief, after the term had expired at which the opinion was handed down. It is true that the practice of some appellate courts is to hold that judgments in appealed cases become final at the close of the term at which they are rendered, but this has never been the practice in this court. Such a ruling may often result in great injustice, since it is quite a frequent occurrence that a large number of opinions are handed down on or about the last day of the term, when it would be impossible to prepare or file motions for rehearing. This very case furnishes such an instance, since the opinion came down on the evening of the day before the final adjournment of the term. The provisions of rule 7 allowing 40 days to present a motion for rehearing suspends or supersedes the general rule as to judgments becoming final at the close of the term, and the provisions of the statute referred to are not applicable, except in cases brought under the original jurisdiction of the court. As said in Elliott, Appellate Procedure, sec. 551: "This conclusion rests upon the familiar principle that, where a motion or petition is filed which keeps the case open, the judgment is not a

final one." Until an order is entered disposing of the motion for rehearing or modification the case is not finally disposed of. We held in *Horton v. State,* 63 Neb. 34, that this court does not lose jurisdiction in appellate proceedings until after the mandate has been sent to the district court and action taken thereon, following *People v. Village of Nelliston,* 79 N. Y. 638, and we adhere to this view.

We are inclined to agree with the appellee's contention that the modification sought by the appellant is not within the issues raised by the pleadings. To quote from the appellee's brief: "The sole issue tendered by the pleadings is that the appellees have no franchise and are unlawfully occupying the streets. This is the gist of the action, and on this issue the judgment is conclusive. Obviously these pleadings do not tender the issue that the company is now lawfully occupying the street, but that at some time in the future, either an indefinite period, or a reasonable time, the right of occupancy will terminate." It was not the intention of the court to decide questions not within the issues presented by the pleadings. We are inclined to think that counsel for both appellant and appellee have read more in the opinion than was written by the court, and have extended its meaning by implication to an extent unwarranted by its language. The gist of the opinion, *ante,* p. 333, is contained in the concluding sentence, which is as follows: "Our conclusion is that the Lincoln Traction Company is the owner of the constructed lines of street railway of which it is now in possession, and that it has right and authority to maintain and operate the same; that its purchase of the lines formerly owned by the Lincoln Street Railway Company does not invest it with right or power to extend its lines, or to take possession of streets, or parts of streets, not now occupied by its completed lines, and that such extensions cannot be made, except by proceeding as required by law to obtain an additional franchise for that purpose and the consent of the electors of the city to such extensions as it desires to make and such new lines as it may propose to construct."

The action is *quo warranto*, and the questions whether or not, if the law so authorizes, the city may or may not by proper proceedings, recognizing and protecting or indemnifying the traction company for all its rights of property and equitable rights recognized by the opinion, seek to revoke the license by estoppel held by it, or as to the extent or duration of the equitable right of the railway company in the streets, are not within the issues in the case, were not considered by the court, and it would be manifestly improper, as contended by the appellee, for the court to express any opinion at this time upon these important questions. The state sought an ouster without regard to any equitable property rights of the appellee, and the court refused to allow such spoliation.

In this connection we think it well to say that there was no intention on the part of the court, by any language in the opinion, to depart from the principle announced in *Lincoln Street R. Co. v. City of Lincoln*, 61 Neb. 109, and *City of Lincoln v. Lincoln Street R. Co.*, 67 Neb. 469, and in *State v. Frost*, 78 Neb. 325, that, even if the ordinance submitting the questions to the voters had been valid and the consent of the electors had been obtained under the same, the street railway company would then have "derived no other or greater right than the privilege, license or permission to enter upon the streets for such purpose." Obviously no greater rights could be obtained by virtue of the laches of the city authorities than could have been had if the railway company was in possession of the streets under the provisions of a valid ordinance and the consent of the electors obtained thereunder.

The motion of the appellant to modify the opinion and judgment is

OVERRULED.