STATE, EX REL. W. WOOD BUTE, APPELLANT, V. VILLAGE OF
COLLEGE VIEW ET AL., APPELLEES.

FILED JANUARY 9, 1911.   No. 16,262.

1. **Quo Warranto**: INCLUSION OF LANDS IN MUNICIPALITY. A nonresident
   owner of agricultural lands illegally included within the bound-
   aries of a village may maintain proceedings by quo warranto
   for the purpose of preventing the municipality from exercising
   jurisdiction over his real estate.

2. ———: ———: LACHES. But in such a case the relator should not
   prevail if he and those under whom he claims title, for 16 years
   after the municipality, under color and claim of right, assumed to
   treat said property as part of the village, stood by without sub-
   stantial objection until streets were graded and a permanent side-
   walk built so as to connect the relator's property with the built-
   up part of the village, and his land lies between the business
   section of the village and the only railway within its limits.

APPEAL from the district court for Lancaster county:
WILLARD S. STEWART, JUDGE.   *Affirmed.*

*Tibbets & Anderson,* for appellant.

*Field, Ricketts & Ricketts* and *T. J. Doyle, contra.*

ROOT, J.

This is a proceeding in the nature of a writ of quo
warranto to exclude the village of College View and its
trustees from taxing or otherwise exercising authority
over the relator's real estate. The respondents prevailed,
and the relator appeals.

In 1892 the county commisioners of Lancaster county
incorporated four sections of land and the inhabitants
thereof as the village of College View. The relator
charges that the jurisdictional facts essential to clothe the
commissioners with authority to make that order did not
exist; that his property is suitable and used for agricul-

tural purposes only, and receives no benefits whatever from the village government, but was included within the corporation's boundaries for the sole purpose of levying taxes thereon. The respondents plead the facts which, they assert, authorized the commissioners to make the order of incorporation, deny the allegations in the petition, and plead the statute of limitations, laches, and an estoppel.

College View is about five miles from the business center of the city of Lincoln and is connected therewith by two lines of street railway. A college, with an attendance of about 500 students, a sanitarium, various industries, retail stores, and about 300 dwelling houses are located within the village, which now contains about 1,500 inhabitants. Since 1892 the village has maintained a municipal government, and the proof shows that it is a flourishing and growing community. A line of the Chicago, Burlington & Quincy Railway Company's railway runs through the southern part of the village about a mile distant from the post office, and the relator's tract of land, which contains about 43 acres, lies immediately north of the railway company's right of way. A sidewalk extends along the east side of the highway immediately east of the relator's land, northward through the business part of the village, and street lights are maintained to within 40 rods of his premises. The land abutting the east side of this highway is subdivided into tracts of from one to five acres each. The railway company does not maintain a station at College View, but delivers freight in car-load lots. Passengers come and go by the way of Lincoln, and the express companies serve the people of College View by the use of street cars.

The argument in the relator's brief suggests that we should annul the order of incorporation made by the commissioners in 1892, but at the bar the argument expressed the thought that not the organization but the legitimate boundaries of the corporation should be considered and defined. The people of an unincorporated community

may be united in a municipal corporation if the statutory conditions precedent exist and the procedure provided by law is followed, but a *de facto* municipal corporation is recognized by the law. *Arapahoe v. Albee,* 24 Neb. 242. To create a *de facto* corporation, there must exist a valid statute authorizing incorporation, organization in good faith thereunder by at least a colorable compliance with the law, and an assumption of corporate power. 28 Cyc. 172. All of these elements exist in the history of College View. Furthermore, by making the corporation a party to this action, the relator admits its existence. *State v. Uridil,* 37 Neb. 371; *State v. Lincoln Street R. Co.,* 80 Neb. 333.

In *State v. Dimond,* 44 Neb. 154, it was determined that, in cases like the one at bar, proceedings in the nature of a writ of quo warranto might be prosecuted to relieve the relator's real estate from the unlawful exercise of authority with respect to taxation by municipal authorities, and that decision has been affirmed in an unbroken line of decisions. The relator argues that the statute of limitations does not apply to the case at bar. Whether the statute of limitations will bar a proceeding in the nature of a writ of quo warranto, or an information in that nature, where private ends, and not public interests, will be subserved by the judgment sought, is an interesting question. Since the relator does not insist that we should annul the order creating the corporation of College View, it is unnecesary to determine that point. The relator does not reside upon the territory in dispute, and hence, under the rule announced in *State v. Dimond, supra,* should be permitted to urge his suit in the form in which it is presented. Whatever may be said with respect to parts of the territory included within the original boundaries of College View, there were good reasons for exercising jurisdiction over the relator's tract; it lies between the college campus and the business part of the village, on the one hand, and the railway just referred to, on the other. By including this property, the village

could extend its police regulations over the railway and side-tracks and such other improvements as the railway company might make for the benefit of the citizens of College View. True, the land immediately east of the relator's property forms a connecting link between the built-up part of the village and the railway, but to include this land and exclude the relator's would mar an otherwise more harmonious outline, and would probably give rise to endless disputes between the village trustees, on the one hand, and the county commissioners and the road overseer, on the other, over the maintenance of the highway. The relator's grantor engaged in an abortive lawsuit to oust the village trustees from exercising authority over this land, but with that exception the owners stood idly by until the village constructed, or caused to be constructed, the sidewalk just referred to, the greater part of which is permanent, so that the relator is furnished a convenient way from his property to his post office, trading places, church, schools, and to the street railway, which furnishes him with transportation to the greater part of the city of Lincoln.

We are of the opinion that the relator's laches and the laches of those under whom he claims title are such, when considered in connection with the facts developed by the evidence in this case, that he should not prevail. *State v. Lincoln Street R. Co.*, 80 Neb. 333. We have not overlooked the case of *Chicago, B. & Q. R. Co. v. City of Nebraska City*, 53 Neb. 453, but in that suit the property owner acted immediately after the city sought to enforce a tax levied upon property without its boundaries, but within the limits described in a void ordinance passed for the purpose of bringing the real estate within the city limits.

Upon the entire record, we find that the judgment of the district court is right, and it is

AFFIRMED.

REESE, C. J., not sitting.