JAMES E. BAUM ET AL., APPELLANTS, V. BAUM HOLDING COMPANY ET AL., APPELLEES.

62 N. W. 2d 864

Filed February 19, 1954. No. 33454.

198

*Kennedy, Holland, DeLacy & Svoboda,* for appellants.

*King, Haggart & Kennedy,* for appellees.

Heard before SIMMONS, C. J., CARTER, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an action for a declaratory judgment declaring

the rights, status, and other legal relations of the Baum Realty Company and the Baum Holding Company, and the stockholders of each, with relation to the facts pleaded in the petition, and praying for an injunction and other equitable relief. The trial court sustained a demurrer to the petition and dismissed the action. Plaintiffs appeal.

As a matter of convenience the Baum Realty Company will be referred to as the realty company and the Baum Holding Company will be designated as the holding company.

On February 18, 1922, the realty company was incorporated under the laws of this state. Its incorporation appears to have been the result of a disagreement between David A. Baum and the heirs of James E. Baum. The stockholders were all members of the Baum family who were the owners of the Bennett Building at Sixteenth and Harney Streets in Omaha and the adjoining garage property at Seventeenth and Howard Streets. The purpose of the incorporation of the realty company was to place the ownership and management of these properties in the hands of a corporation as a matter of convenience. Stock was issued in the amount of 1,237 shares to the members of the family in proportion to their interests in the property. It is important to note that David A. Baum and members of his immediate family became the owners of less than a majority of the stock of the realty company.

It appears from the petition that David A. Baum, Daniel Baum, Charles L. Baum, and Margaret Greer Baum, shortly after the incorporation of the realty company, organized the holding company. The four of them owned 620 shares of stock in the realty company, a majority of the stock of the latter company. Each assigned his shares of stock in the realty company to the holding company and received in exchange therefor an equal number of shares of holding company stock. The 620 shares of realty company stock constitute the total

assets of the holding company, and under its articles of incorporation it can have no assets other than the realty company stock.

The articles of incorporation of the holding company state that the purpose of its organization was "to acquire, own and hold 620 shares of the par value of $100 per share of Baum Realty Company, a Nebraska corporation." The articles also provided: "The corporation shall have power to purchase additional shares of stock of said Baum Realty Company but shall not have power to sell, transfer, assign or otherwise dispose of any stock of Baum Realty Company acquired, owned, held, or controlled by it at any time except as hereinafter provided for in these articles." It was provided elsewhere in the articles that "The property of this corporation may be sold as a whole but not in part, and only by consent of at least ⅔rds of the outstanding stock of the corporation." It was further provided that the articles could not be amended except upon a vote "of at least ⅔rds of the outstanding stock." The petition further alleges that David A. Baum and his daughter, Margaret Greer Baum, owned more than two-thirds of the stock of the holding company at the time it was organized, and that the defendants other than the holding company, the State of Nebraska, and the Attorney General of the State of Nebraska, are the successors in interest and the present owners of the stock owned by David A. Baum and Margaret Greer Baum when the holding company was organized.

The petition alleges that it appears on the face of the articles of incorporation of the holding company that it was the purpose of David A. Baum to create a holding company to hold a majority of the shares of stock of the realty company, which he could control by virtue of his ownership of a majority of the holding company stock. By this device, it is alleged, he could vote the 620 shares of realty company stock owned by the holding company and thereby control completely both cor-

porations, although he was in fact a minority stockholder in the realty company. The minority stockholders question the right of the majority stockholders of the holding company to thus control the realty company and, more particularly, to do the following: (a) To cast the vote of 620 shares of realty company stock held by the holding company as a unit, regardless of the wishes of the other stockholders of the holding company, (b) to sell or prevent the sale of all or any part of said 620 shares of the stock of the realty company, (c) to control absolutely the affairs of the realty company through their power to elect a majority of its board of directors, (d) to control absolutely the affairs of the holding company through their power to elect a majority of its board of directors, and (e) to prevent any amendment of said articles that would tend to change the situation.

It is the contention of the defendants that plaintiffs, as stockholders in the holding company, cannot question the validity of the holding company as a corporation. The answer to this question turns on whether or not the holding company is a corporation, either de jure or de facto. If the holding company has no existence, either de jure or de facto, it is subject to collateral attack and plaintiffs can properly question it as a legal entity in the manner here sought. But if the holding company is a corporation, de jure or de facto, a suit to destroy it must be by direct attack by the state by quo warranto proceedings. Parks v. James J. Parks Co., 128 Neb. 600, 259 N. W. 509.

It is urged by the plaintiffs that corporations in this state were not permitted to hold and own stock in another corporation at the time the holding company was organized. We assume, without deciding the question, that this was true. In 1941, however, the Legislature enacted Chapter 41, section 77, Laws 1941, now section 21-1,141, R. S. 1943, which provides: "Any corporation operating or organized under this article may guarantee, purchase, hold, sell, assign, transfer, mortgage, pledge

or otherwise dispose of, the shares of the capital stock of, or any bonds, securities or evidence of indebtedness created by any other corporation or corporations of this state or any other state, country, nation or government, and while owner of said stock may exercise all the rights, powers, and privileges of ownership including the right to vote thereon."

The defendants contend that with the adoption of section 21-1,141, R. S. 1943, the power to organize a corporation to hold the stock of another was specifically granted and from and after that enactment, a de jure corporation could exist. The petition shows that the holding company carried on as a corporation many years after 1941. Officers were elected and dividends were paid. Plaintiffs recognized the holding company as a corporation until the difficulties arose which brought about this suit. We agree with the defendants that the enactment of section 21-1,141, R. S. 1943, was sufficient authority to organize a de jure corporation for the holding of stock in another corporation and, consequently, it affords a sufficient basis for a holding that the holding company was a de facto corporation after its enactment.

The Illinois court had a somewhat similar question before it in Lewis v. West Side Trust & Savings Bank, 376 Ill. 23, 32 N. E. 2d 907. In that case it appeared that when the original corporation was formed there was no statutory authority for it to invest in the stock of another corporation. Subsequently the statutes of that state were amended to permit such a corporation to own and hold such stock, such amendments being identical to those made in the case before us. It was there contended that the amendments would not apply to a previously existing company which had not amended its articles to conform to the new law. The court held to the contrary, saying: "The legislature, which is the judge of what is politic for this State, changed its policy by the 1919 Corporation act, and stockholding by corporations was thereby authorized. Another answer to

the point that the defendant had not accepted the 1919 act assuming, arguendo, that acceptance was necessary, is that the act could be accepted by user, where no other method was prescribed * * *." See, also, Roedelsheim v. Twelfth Street Store Corporation, 325 Ill. App. 692, 60 N. E. 2d 650.

It is a fundamental principle that there cannot be a corporation de facto where there are no laws authorizing a corporation de jure. Assuming that there were no laws authorizing a corporation de jure prior to the enactment of Chapter 41, Laws 1941, such authorization clearly existed after the adoption of that act. A purported corporation was in existence which could have been organized pursuant to the 1941 corporation act. A colorable compliance with the act subsequent to 1941 was had. There was an actual user of the authority granted by the act in which the plaintiffs participated and acquiesced. The holding company carried on business in full compliance with Chapter 41, Laws 1941, for many years before plaintiffs undertook to question its validity and powers. In discussing the nature of de facto corporations this court has said: "But, ofttimes, an association may not be able to justify itself when called on by the state to show by what authority it assumes to be, and acts as, a corporation. It may, however, be so far a corporation that, for reasons of public policy, no one but the state will be permitted to call in question the lawfulness of its organization. Such is what is termed a corporation de facto; that is, a corporation from the fact of its acting as such, though not in law or of right a corporation." Parks v. James J. Parks Co., *supra*. We conclude therefore that as to parties involved in this litigation, they are estopped to deny that the holding company is what it held itself out to be. We quote again from the case of Parks v. James J. Parks Co., *supra:* "A substantial compliance will create a corporation de jure. But there must be an apparent attempt to perfect an organization under the

law. There being such apparent attempt to perfect an organization, the failure as to some substantial requirement will prevent the body being a corporation de jure; but, if there be user pursuant to such attempted organization, it will not prevent it being a corporation de facto."

The holding company being a de facto corporation it cannot be attacked collaterally and its legality as an entity may be called into question only by direct attack by the state. "The reason a collateral attack by a third person will not avail against a corporation de facto is that, if the rights and franchises have been usurped, they are the rights and franchises of the state, and it alone can challenge the validity of the franchise. Until such interposition, the public may treat those in possession and exercising corporate powers under color of law as doing so rightfully. The rule is in the interest of the public and is essential to the safety of business transactions with corporations. It would produce disorder and confusion, embarrass and endanger the rights and interests of all dealing with the association, if the legality of its existence could be drawn into question in every suit in which it is a party or in which rights were involved springing out of its corporate existence." Thies v. Weible, 126 Neb. 720, 254 N. W. 420. In Haas v. Bank of Commerce, 41 Neb. 754, 60 N. W. 85, we also said: "It would be intolerable to permit in any civil action, to which such a body was a party, an inquiry into the legal right to exercise corporate functions - a right which it is for the state alone to question in appropriate proceedings for that purpose. On this there is a substantial unanimity in the authorities."

Plaintiffs urge that in any event the right of one corporation to own and hold stock in another as permitted by the 1941 act is not an unlimited one, but merely a power to be exercised incidentally by a corporation organized for some purpose other than the mere holding of stocks. The statute bears no such construction and

the articles themselves cannot be so limited where the only purpose, as here, is the holding of stocks in a named corporation. Cases which interpret the objects and purposes of a corporation as stated in its articles with respect to the holding of stocks of other corporations are not pertinent to the construction to be placed upon the statutory provision relating thereto in the 1941 act. Such act, section 21-1,141, R. S. 1943, contains no language from which it can be inferred that the right to own and hold stock of another corporation is an incidental as distinguished from an independent power.

It is also urged that a corporation owning and holding the capital stock of another is not entitled to vote its stock or otherwise participate in the management or control of the corporation in which it acquires stock. Whatever the rule may be in the absence of statute, we point out that such right is expressly granted by section 21-1,141, R. S. 1943.

We point out, also, that the holding company is made a party defendant to this litigation. This is a recognition of its corporate existence by the plaintiffs. State ex rel. Summers v. Uridil, 37 Neb. 371, 55 N. W. 1072; State ex rel. Caldwell v. Lincoln Street Ry. Co., 80 Neb. 333, 114 N. W. 422, 14 L. R. A. N. S. 336; State ex rel. Bute v. Village of College View, 88 Neb. 232, 129 N. W. 296.

For the reasons stated, that part of the petition which questions the existence of the holding company as a corporation does not state a cause of action on the part of these plaintiffs.

The plaintiffs as minority stockholders question the right of the holding company to vote the 620 shares of realty company stock owned by it as a unit as directed by the majority stockholders of the holding company. The answer to this contention is found in section 21-1,141, R. S. 1943, wherein it is stated that "Any corporation operating or organized under this act may guarantee, purchase, hold, * * * the shares of the capital

stock of * * * any other corporation or corporations of this state * * *, and while owner of said stock may exercise all the rights, powers, and privileges of ownership including the right to vote thereon." It is clear that the holding company has statutory authority to vote the stock owned by it as a unit. There is no merit to this contention of the plaintiffs.

Plaintiffs assert that the majority stockholders of the holding company have no right to sell or prevent the sale of all or any part of the 620 shares of stock of the realty company, or to prevent the amendment of the articles of incorporation so as to change the situation created by the organizers of the holding company when they adopted its articles. It is true, as we have hereinbefore quoted, that the articles of incorporation of the holding company provide that no part of the 620 shares of stock of the realty company owned by the holding company can be sold without the approval of the owners of two-thirds of the stock of the holding company and that the articles of incorporation of the holding company may not be amended except by the approval of the owners of two-thirds of the stock of the holding company. The question here presented is whether the court, at the instance of dissatisfied minority stockholders, may compel action in conflict with the adopted articles of the corporation. We find no statute prohibiting the provisions contained in the articles. It is not urged that they are in violation of any statute.

It is asserted in the petition that David A. Baum induced his two brothers, Daniel Baum and Charles L. Baum, to join with him in organizing the holding company for the express purpose of gaining personal control of the company. This is not an unlawful object. Contracts between stockholders whereby they agree or combine for the election of directors or other officers, so as to secure or retain control of the corporation where the object is to carry out a particular policy with a view to promote the best interests of stockholders, have been

generally upheld. We can see no reason why the same object may not be attained by the organization of a holding company as by a contract between the parties. In one sense of the word the organization of the holding company is by virtue of an agreement. David A. Baum, Daniel Baum, Charles L. Baum, and Margaret Greer Baum entered into the agreement to organize the holding company. They knew the contents of the articles of incorporation and affixed their signatures thereto. It is not claimed that any wrong was perpetrated in so doing, other than the claim that David A. Baum was seeking to control the corporation, an object that we have held to be entirely proper. This court has held that the contents of articles and by-laws may be held valid as an agreement between the parties, even if the validity of such may be subject to question. Elson v. Schmidt, 140 Neb. 646, 1 N. W. 2d 314, 138 A. L. R. 641. It would seem therefore that the provisions of the articles of incorporation, even though they appear to infringe upon the right of ownership of property, may be sustained as a contractual restriction. The argument advanced by the plaintiffs that defendants have acted fraudulently or in violation of their trust relationship with the minority stockholders has no merit in this case for the reason that facts are not alleged which constitute fraud or a breach of trust. We concede that majority stockholders must act honestly and if fraud or a breach of trust toward minority stockholders can be shown, the law provides a remedy. But the petition before us does not plead facts entitling plaintiffs to such a remedy.

The petition does allege that the articles of incorporation of the realty company provide that the net income of the corporation shall be distributed monthly. It further states that the defendants Sloan Allen and Margaret Greer Baum Allen as majority stockholders and directors have willfully refused to comply with this provision of the articles and have withheld net

income from distribution in violation thereof. The realty company appears as a party plaintiff asking that the defendants be compelled to comply with the provisions of its articles. This clearly states a cause of action against the officers and directors of the realty company. On this issue the trial court was in error in sustaining the demurrer to the petition. If these allegations are found to be true upon a trial, plaintiffs are clearly entitled to relief.

The judgment of the district court is therefore reversed and the cause is remanded with directions to the district court to enter an order overruling the demurrer and requiring the defendants to answer that part of the petition stating a cause of action against them as herein found. The costs of this appeal are taxed against the defendants Sloan Allen and Margaret Greer Allen.

REVERSED AND REMANDED WITH DIRECTIONS.